UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| DEBBIE PLUCKER,<br><br>        Plaintiff,<br><br>vs.<br><br>UNITED FIRE & CASUALTY COMPANY,<br><br>        Defendant. | Civ. 12-4075<br><br>**UNITED FIRE'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL** |

Defendant United Fire & Casualty Company ("United Fire") submits this Response to Plaintiff's Motion to Compel.

### BACKGROUND

Following a May 24, 2011, accident involving its insured, Plaintiff Debbie Plucker ("Plucker"), United Fire attempted to gather Plucker's accident related medical bills **and** records – as it is entitled to do, both under the policy and South Dakota law – so it could process Plucker's medical payments benefits claim. Plucker provided the bills from her treating chiropractor, Dr. Lanpher, but did not provide her medical records, or an unadulterated standard medical authorization. United Fire was, therefore, unable to process Plucker's claim. This lawsuit followed.

Six months after filing a lawsuit alleging bad faith refusal to pay medical payments benefits, and almost eighteen months after the accident, Plucker produced Dr. Lanpher's medical records. In turn, United Fire paid Plucker's med pay claim in full. All that remains is Plucker's bad faith claim, which is largely a legal question related to HIPPA and its requirements for medical authorizations.

**ARGUMENT**

As indicated in Plucker's Brief [Doc. 19] and the Affidavit of Robert D. Trzynka [Doc. 18], Plucker served her first set of interrogatories and requests for production of documents on October 29, 2012. Defense counsel requested an extension until January 14, 2013, which was granted by Plucker's counsel. United Fire served an unsigned copy of its discovery responses on January 25, 2013. Due to an oversight on the part of United Fire and defense counsel, a signature page was not provided until the oversight was discovered on or about October 30, 2013. A signature page was provided on November 5, 2013. United Fire's First Supplemental Responses to Plaintiff's Requests for Production of Documents (First Set) were also served on November 5, 2013.

At the time United Fire's unsigned responses were served, no protective order was in place. The terms of a protective order were eventually stipulated to on May 3, 2013 [Doc. 12], and Judge Schreier entered a Protective Order on May 9, 2013 [Doc. 13].

On May 10, 2013, United Fire produced over 1700 pages of documents pursuant to the Protective Order. United Fire has since both formally and informally supplemented its responses and produced an additional 1132 documents. United Fire acknowledges that it took longer than it should to gather and produce the requested documents. Due to the extensive case load of United Fire's lead counsel, Plucker's requests for supplementation were concededly not addressed as quickly as they should have. That said, United Fire's counsel has, and continues to, discuss and work with Plucker's counsel to narrow and define the requested (and available) documents. Except for a few remaining documents which United Fire is still tracking down, if they exist, United Fire has responded in full to Plucker's discovery requests.

For ease of reference by the Court, United Fire will follow the Roman numeral outline (starting at III) of Plucker's Brief [Doc. 19].

### III. Bad Faith Litigation Documents

As Plucker points out, after discussions between counsel, Plucker agreed to limit these claims to med pay bad faith claims. Via e-mail on October 18, 2013, United Fire advised Plucker that no bad faith claims existed related to med pay. United Fire's counsel was under the impression that RFPD. 22 was also limited to med pay claims and claims related to medical authorizations. Sometime thereafter, Plucker's counsel clarified that it still sought the transcripts of deposition and trial testimony given by Sherri Wade, Roberta Sniffen, Kristine Schares and Dave Conner related to "any suit alleging breach of contract, fraud, or bad faith in a case arising out of first-party automobile claims from January 1, 2007 to present."

On November 5, 2013, United Fire served formal supplemental Responses to Plaintiff's Interrogatories and Requests for Production of Documents (First Set), indicating that the subject individuals have not given deposition or trial testimony in any suit alleging breach of contract, fraud, or bad faith in a case arising out of first-party automobile claims from January 1, 2007 to present. United Fire has complied with Plucker's discovery requests for bad faith litigation documents. No such documents exist.

### IV. Identity of Relevant Employees and Production of their Personnel Files

In its original discovery responses served on January 25, 2013, United Fire identified claims representative Sherri Wade and claims supervisor Roberta Sniffen – the two United Fire employees who handled and supervised Plucker's med pay claim. Plucker felt the response was inadequate and sought identification of Wade and Sniffen's supervisors, all the way up to the head of claims. Via e-mail on October 17, 2013 (prior to the motion to compel being filed) United Fire identified Sniffen's supervisor, branch manager Kristine Schares, and Schares supervisor, VP and head of

3

claims, Dave Conner. United Fire's relevant employees have been identified, and were prior to Plucker's Motion to Compel.

United Fire initially agreed to produce to the Court for in-camera inspection copies of the personnel file of those individuals directly involved in the handling of Plucker's claim. Since that time, United Fire has submitted for in-camera review the personnel files of Roberta Sniffen, Shari Wade, Kristine Schares and Dave Conner [Doc 22.], even though Schares or Conner did not directly handle, review, supervise, and/or audit Plucker's claim.

Following the Court's Order re: *in-camera* review [Doc. 24], United Fire produced to Plucker the entire personnel files of Roberta Sniffen, Shari Wade, Kristine Schares and Dave Conner. Even though United Fire believes that the personnel files of any United Fire employees outside of those who directly handled the med pay claim and medical authorization issue is irrelevant to the legal issues at hand in this lawsuit, United Fire produced all requested personnel files to avoid further litigation on the issue. All relevant personnel files have been produced.

**V.    General Claims Manual, Quality Assurance Manuals, Best Practices and Audit Procedures.**

Plucker may find it "curious" that United Fire does not have a "best practices" list, but the simple fact is that United Fire's "best practices" are contained solely within its claims and branch manuals, both of which were produced to Plucker on May 10, 2013.

Regarding any argument in Plucker's Brief that United Fire has not produced all applicable manuals, or that portions of claim manuals were not produced, the confusion was inadvertently caused when United Fire, following entry of the Protective Order, served only documents on May 10, 2013. This was done absent the formal discovery responses giving the specific bates stamp numbers and their correspondence to each individual discovery request. To be clear, the formal discovery responses were drafted before May 10, 2013, but were inadvertently not served. When

4

United Fire's counsel realized the error during a phone conference with Plucker's counsel, we sent Plucker a fully executed copy of United Fire's formal discovery responses containing the bates stamp identifications. In any event, the confusion has been resolved between the parties, which resolution included production of United Fire's entire Employee Manual, portions of which were produced on May 10, 2013. In sum, United Fire's Claims Manual, Branch Manual and Employee Manual have been produced in full.

Regarding training materials, the claims manual, branch manual and employee manual have all been produced. Additionally, over 300 pages of responsive documents were produced on May 10, 2013.

**VI.     Bonus, Compensation, and Incentive Program Documentation.**

On May 10, 2013, United Fire produced its Annual Incentive Plan in place during years for 2001- 2012. The AIP adopted in February 2012 was produced to Plucker on November 5, 2013. Also on May 10, 2013, United Fire's bonus target spreadsheets were produced for years 2003-2009. On November 12, 2013, United Fire produced its bonus target spreadsheets for years 2010-2013. Plucker has all applicable bonus plan documents. Plucker also has the entire Employee Manual, which does reference bonuses and salary. The portions that do reference bonus and salary were produced to Plucker on May 10, 2013.

As for RFPD No. 16 (performance based incentive plans), Plucker was advised back in January, 2013, that no such documents existed. No such documents exist. Further, Plucker has been advised that no such "Gold Club" documents exist.

**VII.    Cost containment.**

As stated above, United Fire has produced its Claims Manual and Branch Manual. It has also produced its Goals and Objectives for 2003-2012. A portion of those Goals and Objectives

5

dealt with "loss adjustment expense." Doug Walters was assigned the task of implementing strategies for controlling loss adjustment expense. Those "strategies" have been produced to Plucker. This lawsuit is not about claims minimization or deterrent conduct. Quite the opposite, United Fire was simply trying to gather Plucker's records, whether through use of a HIPPA compliant medical authorization, or, in the alternative, Plucker gathering the records herself. United Fire wanted to investigate and process the claim. Plucker made that investigation unnecessarily difficult. In any event, the parties have discussed the goals and objectives and whether other such supportive documents exist. Specifically, the production standards and claims assignment criteria referenced in strategies 1 and 2. See Trzynka Aff. [Doc.19] at Ex. NN, Bates Stamp No. UF 000780.

**VIII.    Regulatory Activities.**

Similar to Plucker's request for all trial and deposition testimony, United Fire was under the assumption that Plucker was limiting the scope of her request to complaints regarding medical payments benefits or medical authorizations. On October 18, 2013, United Fire advised that no such claims exist. Thereafter, Plucker's counsel advised that the scope was actually "first-party auto claims from January 2007- present." On November 5, 2013, United Fire provided a copy of the complete file from the only first-party auto complaint involving United Fire with the South Dakota Division of Insurance 2007-present. United Fire has produced all documents responsive to this request.

## CONCLUSION

United Fire is trying to accommodate Plucker and her discovery requests. What started as a med pay claim and refusal by Plucker to sign a standard medical authorization, is now an expensive, document-intensive and discovery-driven federal lawsuit alleging bad faith and punitive damages,

6

and discovery into other claims which are far beyond the scope of the issues in this litigation. Nonetheless, United Fire is, and has been, working with Plucker and her counsel to provide the requested documents. United Fire has complied with Plucker's requests, and continues to participate in the discovery process in good faith. Again, United Fire acknowledges that supplementation should have occurred quicker than it did. Lead defense has apologized for the tardiness in getting Plucker discovery responses.

Dated this 6th day of December, 2013.

MAY & JOHNSON, P.C.


By:   /s/ Eric D. DeNure
     Lon J. Kouri
     Eric D. DeNure
P.O. Box 88738
Sioux Falls, SD 57109-8738
Phone: (605) 336-2565
Fax:   (605) 336-2604
lkouri@mayjohnson.com
edenure@mayjohnson.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing **UNITED FIRE'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL** was served through the Court's ECF system upon Mike D. Bornitz and Robert D. Trzynka, Cutler & Donahoe, LLP, P.O. Box 1400, Sioux Falls, SD  57101-1400, attorneys for Plaintiff, this 6th day of December, 2013.


By:   /s/ Eric D. DeNure
     Eric D. DeNure