UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| DEBBIE PLUCKER,<br><br>        Plaintiff,<br><br>vs.<br><br>UNITED FIRE & CASUALTY COMPANY,<br><br>        Defendant. | Civ. 12-4075<br><br>**PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL** |

## INTRODUCTION

Defendant acknowledges that its production was tardy. Defendant, however, argues that its repeated failure to produce discoverable documents should be exempt from sanction because its counsel was busy. While a busy schedule may excuse some delay, Defendant failed to disclose over 1100 pages of discovery until *after* Plaintiff filed her Motion to Compel and *more than a year after* Plaintiff sent Defendant her discovery requests.

Defendant never argues that Plaintiff's requests were unreasonable. Defendant simply argues now that it produced what it has. Defendants records, however, indicate that more documents exist. They should be produced. Plaintiff's Motion to Compel should be granted.

**ARGUMENT**

Defendant concedes two arguments, one explicitly, the other implicitly: 1) that its production was tardy; and, 2) that Plaintiff's requests were reasonable. As Defendant admitted in its brief, "United Fire acknowledges that it took longer that it should to gather and produce the requested documents."[1] Defendant, though, falls back on the excuse that its counsel was busy.

First, a busy calendar does not excuse any party's year plus failure to produce over 1100 pages of discoverable documents. Plaintiff's counsel also has an extensive case load. Defendant, however, frequently failed to communicate at all with Plaintiff for most of that year, despite Plaintiff's repeated attempts to meet and confer. Absent Plaintiff's motion, it's doubtful that Defendant would have produced these additional documents at all.

Second, Defendant's brief lacks any further justification for its refusal to produce. It argues that it produced all the records it has in its possession, but Defendant neither documented its efforts to find responsive documents nor certified that the documents don't exist, as the Rules require.[2] Plaintiff has no reason to doubt the honesty and integrity of Defendant's counsel, but Defendant's counsel is largely dependent on Defendant's underlying representations, which are questionable.

Meanwhile, Defendant's records show that it has additional responsive documents in its possession. Multiple records reference documents Defendant alleges don't exist. Specifically, these records indicate that Defendant possesses additional information documenting its bonus/incentive programs, cost containment programs, and employee performance objectives and compensation. Plaintiff asks the Court to compel Defendant to produce these documents.

---

[1] Doc. 26, p.2.
[2] *See eg.*, *Janis v. Nelson*, Civ. No 09-5019, 2009 U.S. Dist LEXIS 121089, 20, 31 (D.S.D. December 30, 2009).

## I. Defendant's Bad Faith Litigation Documents

Plaintiff voluntarily agreed to limit discovery on Defendant's other bad-faith litigation. Defendant eventually disclosed that it had not been in any first-party bad faith, breach of contract, or fraud suits stemming from first-party automobile claims since January 1, 2007. This disclosure, however, didn't occur until October 18, 2013, on the eve of Plaintiff's Motion to Compel. Similarly, Defendant's supplementation regarding depositions or trial testimony taken by Defendant's relevant employees didn't take place until after Plaintiff filed her motion.

Defendant has its own internal legal department that tracks this information. The personnel files for the employees who supervised Plaintiff's claim are littered with references to efforts to improve litigation tracking and control. This discovery should have been easy for Defendant to produce. Plaintiff should not have been forced to repeatedly threaten – and eventually file – a motion to compel to get the information.

## II. Defendant's Employees' Personnel Files

Defendant shifted tactics several times related to its personnel files. Originally, Defendant refused to produce, or even identify, any employee other than Roberta Sniffen and Sherri Wade. In January 2013, Plaintiff provided Defendant this District's current precedence requiring Defendant to identify and produce the *complete* personnel file for every employee who handled, reviewed, supervised, and/or audited Plaintiff's claim, all the way up to the head of the claims department.

Defendant also insisted any personnel file be subject to an *in camera* review prior to production. Despite Plaintiffs repeated requests, Defendants failed to cite any case law supporting its insistence on *in camera* review. Defendant also neglected to mention which privilege protected these documents.

Eventually, after Plaintiff indicated that a motion to compel was imminent, Defendant identified Kristine Schares, Sniffen and Wade's branch manager, and Dave Conner, VP and head of claims. As with Defendant's litigation history, Defendant disclosed this information informally on the eve of Plaintiff's motion.

Defendant still maintained that an *in camera* review was necessary, however. On November 12, 2013, Defendant submitted its personnel files to the Court for *in camera review*.[3] Defendant again neglected to cite any law or privilege supporting its position. In response, Plaintiff researched and briefed the issue.[4]

Eventually, Defendant produced personnel files for Sniffen, Wade, Shares, and Conner. Defendant didn't submit an updated pleading certifying that these personnel files were complete. Defendant didn't even provide a cover letter. It simply had a runner drop off a CD at Plaintiff's counsel's offices.

Defendant's personnel files, however, appear to be incomplete. Sniffen, Wade, and Schares' annual performance reviews reference goals related to individual audit scores.[5] Aside from the raw scores, Defendant didn't produce any information related to how Sniffen, Wade, or Schares were scored. Curiously, Defendant left out every one of Conner's performance reviews after 2003.

Defendant's personnel files also reference goals and objectives it set for these employees. Those goals and objectives documents, however, are missing. For example, Defendant's

---

[3] Doc. 22.
[4] Doc. 23.
[5] *See eg.*, Affidavit of Counsel, Exhibit A at UF001835 (Excerpts from Sniffen Personnel File) ("Roberta's Team was successful and received a Corporate Audit score of 89.6%), Exhibit B at UF001866 (Excerpts from Wade Personnel File) ("Scored a 93.8 on the corporate audit"), and Exhibit C at UF002768 (Excerpts from Schares Personnel File) ("[unreadable] would like Kristine to focus on the following goals and objectives for next year…: Obtain an audit score of 90 or better.").

4

personnel files repeatedly reference its branch goals. First, Defendant previously insisted that it didn't set branch goals. Defendant's personnel files disprove that assertion. Not only did Defendant keep branch goals, it actively monitored those goals and based its employees' performance reviews off of them.

Such goal setting and monitoring is consistent with what other insurance companies do. Insurers frequently spell out corporate, branch, and individual goals to employees in personnel files.[6] Frequently, these goals relate to individual, branch, and corporate financial performance. Insurers then base an employee's reviews and compensation off of whether the employee meets or exceeds those financial goals.

Defendant's personnel files shows that it is no different. They demonstrate that Sniffen, Wade, and Schares were expected to conform to certain goals and to achieve specific audit metrics. Those goals and metrics are noticeably absent from what Defendant produced. Defendant should produce them. Plaintiff asks this Court to clarify Defendant's discovery obligations and compel production of these materials.

### III. Defendant's General Claims Manual, Quality Assurance Manuals, Best Practices, and Audit Procedures.

Defendant claims that it produced everything it uses to train its employees. It contends that the only manuals used in training were its claims manual, branch manual, and employee manual. Defendant's personnel files suggest otherwise.

In her 2011 performance review, Sniffen, herself, noted that one of her accomplishments was that she "[h]elped develop and write the new *Claims Training Manual*.[7] Defendant,

---

[6] *See eg.*, *Lillibridge v. Nautilus, et al.*, Civ. No. 10-04105 [Doc. 87-22] (D.S.D. 2012) (Exhibit V to Plaintiff's Motion to Compel Production).

[7] *See* Affidavit of Counsel, Exhibit A at UF001837 (Excerpts from Sniffen Personnel File) (emphasis added).

however, maintains that the only manuals it uses for training are its claims and branch manuals. Sniffen's personnel file refutes that claim. Defendant should be required to produce the training manual Sniffen helped rewrite and any subsequent updates.

Additionally, Sniffen, Wade, and Schares' personnel files fail to document in any way their personal compensation. It is hard to imagine that a corporation would leave compensation out of its employees' personnel files. Defendant should supplement Sniffen, Wade, and Schares' personnel files to document their compensation (including salary, bonus, and any other incentive) packages over time. Conner's employee file, while describing his salary changes over time, is devoid of any reference to bonuses or the like. Defendant should also produce Conner's bonus and other incentive information.

## IV. Defendant's Bonus, Compensation, and Incentive Program Documentation.

Defendant again claims that it produced all documents responsive to these requests. Yet, it is hard to believe that a scant 18-page document (Defendant produced more than 18 pages, but these additional pages are merely copies for different years) is the only reference to an insurance company's bonus, incentive, and compensation programs and what factors drive those programs.

As Plaintiff already noted, Defendant's internal documents discuss a wide array of "targets and weightings" that Defendant might "change annually based on [any] shift in focus."[8] Defendant failed to provide any information that documents these "targets" or "weightings." Defendant also neglected to produce documents describing how its year-to-year shift in focus changes those weightings.

---

[8] Doc. 18-41 at UF000761.

Defendant cannot determine its targets or calculate its weightings in a vacuum. Defendant's executives discuss them. Its executives exchange email and memoranda arguing one way or another. Defendant should be compelled to produce that information.

Additionally, Defendant's records discuss how each employee's "Calculated Award will be based on the level of performance achieved against assigned performance measures."[9] First, that sentence disproves Defendant's assertion that it does not link compensation to performance measures. The personnel files Defendant produced lacks any description of how Sniffen, Wade, Schares, or Conner corresponded to those measures. It should do so. Second, it points to additional information documenting how it compensates its employees.

Plaintiff has no reason to question Defendant's counsel's integrity, but he can only represent what Defendant tells him. Defendant's counsel is far away from Defendant's main offices. He has neither direct access to Defendant's files nor is he intimately familiar with its business practices or records.

Judge Duffy was confronted by a similar situation involving Auto-Owners Insurance Company. As Judge Duffy observed:

> Auto–Owners has produced in response to this request a bi-annual e-mail from its CEO to all employees regarding the status of the bonuses for that year. Auto–Owners represents that these e-mails are the only documents responsive to plaintiffs' request number 10. Plaintiffs suspect that there are more, as does the court.[10]

Plaintiff suspects there are more documents here, as should the Court. Defendant's internal documents suggest they exist. They should be produced.

V. **Defendant's Cost Containment Programs**

---

[9] *Id*. at UF000759.
[10] *Kirschenman v. Auto-Owners*, 280 F.R.D. 474, 486 (D.S.D. 2012).

7

Defendant claims that this case is "not about claims minimization or deterrent conduct."[11] Defendant is incorrect. Defendant knows that its insureds' medical histories are private and potentially embarrassing for their insureds. Defendant also knows that many insureds who have small claims, like Plaintiffs, will choose to not make a medical payment claim rather than engaging in a lengthy – and potentially costly – dispute with Defendant.

Defendant wagers that disputes with its insureds over small dollar amounts are unlikely to result in litigation against it. Large dollar disputes carry big stakes for an insured. As a result, an insured is much more likely to take an insurance company to court over large amounts of money.

Denying small dollar claims, however, carry little risk to the insurer. If an insurer denies a small claim, many insureds write it off as not worth their time. Of the small number who actually takes the dispute to an attorney, even fewer of these end up in court because many attorneys won't take small cases. All the while, the insurer aggregates these small denials into big profits (and big bonuses).

That is why cases like this tie into Defendant's cost containment programs. Defendant acknowledges that it assigned various executives to developing strategies and plans to reduce costs and losses. It contends, however, that the documents identifying those assignments are all that exist. It is illogical that executives would be assigned tasks to develop strategies to reduce costs without documenting those strategies.

Defendant's Employee Handbook further disproves Defendant's claim. There, Defendant lays out expectations for its business unit managers. It tells them:

> We expect our business unit managers to meet, and exceed where possible, corporate benchmarks in terms of Return on Equity (ROE), expenses, lapse and

---

[11] Doc. 26, p. 6.

> loss ratios. They are expected to develop their own business plan, aligning their efforts with corporate benchmark goals, and communicate their progress regularly.[12]

Defendant, however, has not produced any business plans talking about its benchmarks for ROE, expenses, lapse, or loss ratios. These are all part of its cost containment strategies. They should be produced.

Last, Defendant didn't document its efforts to obtain responsive documents. It didn't certify that it even tried. Opposing counsel is simply not in a position to have personal knowledge of Defendant's internal files or business practices.

Plaintiff asks this Court for an order crystallizing Defendant's obligations. Plaintiff asks for an order compelling Defendnat to disclose all documents responsive to Plaintiff's cost containment discovery requests, whether those documents are known now, or become known in the future.[13] Plaintiff also asks for an order directing Defendant to immediately make a reasonable and thorough inquiry into these areas in an attempt to discover responsive documents and to provide evidence detailing its efforts.[14]

## VI. Attorney Fees

Defendant acknowledges that it delayed producing discoverable documents. It similarly admits that it had to produce over 1100 pages after Plaintiff filed her motion to compel.

Rule 37 provides that if a motion to compel "is granted – or if the disclosure or requested discovery is provided after the mostion was filed – the court must" require the resisting party to pay the movant's reasonable expenses, including attorneys fees.[15] When awarding fees, " '[t]he

---

[12] *See* Affidavit of Counsel, Exhibit D at UF002593 (Excerpts from Employee Handbook).
[13] *Kirschenman*, 280 F.R.D. at 486.
[14] *Id*.
[15] Fed. R. Civ. P. 37(a)(5)(A).

9

fault concept … remains central."[16] "Rule 37 allows for expenses as a sanction for improper conduct in discovery 'to encourage extrajudicial discovery with a minimum of court intervention.' "[17] "'[T]hus is placed directly on attorneys a somewhat unique sanction to refrain from the frivolous, to weigh carefully considerations of relevancy and privilege, and to advise in accordance with their best judgment.'"[18]

Defendant's brief fails to dispute Plaintiff's claims that these documents are discoverable. Defendant's entire justification for its year long delay was that its counsel was busy. That excuse, however, does not absolve Defendant from an attorneys' fees sanction under the Rules. The Rule states that a party failing to disclose documents may only avoid attorneys' fees if its failure to produce was "substantially justified."[19] The fact that a counsel was busy does not substantially justify its inability to produce records to a litigant for over a year.

Plaintiff repeatedly requested production from January 2013 through October 2013. Defendant's disclosure was slow to non-existent. Defendant's inaction repeatedly forced Plaintiff into threatening to file a motion to compel. Each time, Defendant would ask for an extension, which Plaintiff repeatedly granted. Plaintiff's extensions, however, did not result in Defendant's promised disclosure.

Eventually, in October 2013, Plaintiff refused to give any further extensions and notified Defendant that a Motion to Compel was imminent. Defendant then started identifying and producing documents. It is safe to assume that, absent Plaintiff's motion, Defendant would still be asking for extensions.

---

[16] *Kirschenman v. Auto-Owners Ins.,* 2012 WL 1493833 at *1 (D.S.D.). (quoting 8B Charles Alan Wright et al., *Federal Practice and Procedure*, § 2284 (3d ed. 2010)).
[17] *Id*. (quoting Wright et al., § 2288).
[18] *Id*. (quoting Wright et al., § 2288).
[19] Fed. R. Civ. P. 37(a)(5)(A)(ii).

Plaintiff wants to clarify that she does not believe that Defendant's counsel is trying to mislead either the Plaintiff or the Court. Plaintiff believes that Defendant's counsel is as much a victim of Defendant's gamesmanship as are Plaintiff and the Court. Defendant's strategy from the outset has been the same as numerous other insurers before Courts in this District.[20] It delayed production for as long as possible, eventually forcing Plaintiff to file a motion to compel. Meanwhile, it kept its own counsel in the dark about what documents it had to avoid counsel being forced to disclose that information.

Such tactics don't ease the discovery process. Discovery is liberally construed to minimize judicial intervention and to streamline litigation. The Rules rely on sanctions to discourage parties from wasting time and adding expense. As Judge Schreier noted, attorneys' fees are appropriate where a resisting party refuses to participate in meaningful extrajudicial attempts to elicit production for relevant requests.[21] Defendant's actions, however, looked to maximize judicial intervention.[22] Under the Rules, that requires Plaintiff's expenses and attorneys' fees to be taxed against Defendant to deter Defendant and other future litigants from engaging in similar tactics.

## CONCLUSION

Defendant had ample time to reasonably respond to Plaintiff's discovery requests. It, however, delayed production for substantial amounts of discoverable material for over a year and then only produced these documents on the eve of or after Plaintiff filed her motion to compel. Absent Plaintiff's motion, it is very likely that Defendant would not have produced those

---

[20] *See eg.*, *Kirschenman*, 280 F.R.D. 474; *Lillibridge v. Nautilus Ins. Co.*, Civ. No. 10-4015, 2013 U.S. Dist. LEXIS 63398 (D.S.D. May 3, 2013); *Burke v. Ability Ins. Co.* 291 F.R.D. 343 (D.S.D. 2013); *Hurley v. State Farm Mut. Auto. Ins. Co.*, Civ. No. 10-4165, 2012 U.S. Dist. LEXIS 63602 (D.S.D. May 7, 2012).
[21] *Kirschenman*, 2012 WL 1493833 at *2.
[22] *Id*.

documents. Even so, Defendant has yet to produce numerous relevant documents related to its employees' personnel files and its cost containment processes and procedures. Plaintiff asks the Court to clarify Defendant's discovery obligations by granting Plaintiff's motion and to award Plaintiff her expenses and attorneys' fees.

Dated this 19th day of December, 2013.

    /s/Robert D. Trzynka
Michael D. Bornitz
Robert D. Trzynka
Cutler & Donahoe, LLP
100 N. Phillips Ave., 9th Floor
PO Box 1400
Sioux Falls, SD 57101-1400
(605) 335-4950
*Attorneys for Plaintiff*

## CERTIFICATE OF COMPLIANCE

In accordance with LR 7.1(b)(1), I certify that this brief complies with the word limits described therein. This brief was prepared using MS Word, Times New Roman, 12 font, and contains 3,175 words. I relied on the word count provided by the word-processing software to prepare this certificate

Dated at Sioux Falls, South Dakota, this 19th day of December, 2013.

    /s/Robert D. Trzynka
*One of the Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

   I certify that on the 19th day of December, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the appropriate parties:

- **Lon Kouri**
  LKouri@mayjohnson.com

- **Eric DeNure**
  edenure@mayjohnson.com


               /s/Robert D. Trzynka
               Michael D. Bornitz
               Robert D. Trzynka
               Cutler & Donahoe, LLP
               100 N. Phillips Avenue, 9th Floor
               PO Box 1400
               Sioux Falls, SD  57101-1400
               Telephone:  (605) 335-4950
               Facsimile:  (605) 335-4966
               *Attorneys for Plaintiff*