# EXHIBIT P

1 | Page

Paul Brenkman, Inc.<br>
2147 Rulon White Blvd. – Suite 102<br>
Ogden, Utah 84404<br>
Telephone: 801-725-0372

---

July 31, 2014

Robert D. Trzynka
Cutler & Donahoe, LLP
Attorneys at Law
100 North Phillips Avenue – 9th Floor
Sioux Falls, South Dakota 57101-1400

Re:  Debbie Plucker v. United Fire & Casualty Company
     Expert Opinion Report of Paul Brenkman

Dear Mr. Trzynka:

I have completed my initial review of documents, and submit the following opinions and expert witness report pursuant to Rule 26 - Rules of Civil Procedure. I respectfully request the opportunity to supplement this report as additional information may become available.

### Assignment Scope

I have been retained to review the Debbie Plucker vs. United Fire & Casualty Company May 24, 2011 automobile accident claim matters. In doing so, I have read the available police report, accident records, medical treatment records, medical reports, insurance policy, claim file documents, complaint, and various interrogatories, answers, briefs, productions, disclosures, etc. regarding the accident circumstances and injuries sustained by Debbie Plucker.

I have been asked to review documents, and to provide an expert opinion whether United Fire & Casualty Company's (United Fire) handling of Debbie Plucker's (Debbie) Medical Payments coverage claim/s meets the customs and practices required of insurers in handling such claims.

### Qualifications/Compensation

I have been employed in the Insurance Claims Industry since 1970, during which time I was employed over 31 years by Allstate Insurance Company – serving over 25 cumulative years in supervisory and management claim handling positions, including 14 years as Market Claims Manager.

2 | P a g e

Since 2002, I have been self-employed, as Paul Brenkman, Inc., both in my home state and nationally, during which time I have provided a wide variety of insurance claims evaluation and consulting services for plaintiffs, defendants, and insurers in matters including, but not limited to: Independent Claims Adjusting, Claim Settlement Practices Consulting, Insurance Claims Expert Witness, Insurance Claims Appraisal, Insurance Claims Subject Matter Expert, Insurance Claims Liability and Damages Evaluations, Insurance Claims Disputes Resolution, Insurer Claim Department Practices Consulting, and Insurer Claim Policy and Procedure Manuals Consulting.

I am a licensed independent claims adjuster in multiple states.

My qualifications are set forth in my attached Curriculum Vitae. My deposition and trial Testimony History is also attached. I am compensated at the rate of $175.00 per hour for materials review, evaluation, inspection, and report preparation.

Documents/Information Reviewed
- South Dakota Highway Patrol Investigating Officer's Report – Case No. 1106470, Officer Nick C. Jensen, May 24, 2011.[1]
- Recorded Statement of Debbie Plucker, May 25, 2011.[2]
- Debbie Plucker medical treatment records
- United Fire & Casualty Company Claim File – Claim No. 4001032727
- Debbie Plucker vs. United Fire & Casualty Company Complaint, Disclosures, Motions, Productions, Exhibits, etc.
- Debbie Plucker vs. United Fire & Casualty Company, United States District Court South Dakota-Southern Division, COMPLAINT, Civ. 12-4075, April 23, 2012.
- Debbie Plucker vs. United Fire & Casualty Company, United States District Court South Dakota-Southern Division, DISCLOSURES OF DEFENDANT UNITED FIRE & CASUALTY COMPANY, Civ. 12-4075, August 30, 2012.
- Debbie Plucker vs. United Fire & Casualty Company, United States District Court South Dakota-Southern Division, BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS, Civ. 12-4075, October 21, 2013.
- Debbie Plucker vs. United Fire & Casualty Company, United States District Court South Dakota-Southern Division, DEFENDANT'S ANSWERS TO PLAINTIFF'S REQUESTS FOR ADMISSION TO DEFENDANT, Civ. 12-4075, July 14, 2014.
- Personnel File - Sherri Geistkemper/Wade
- Personnel File – Roberta Sniffens
- Personnel File – David Conners
- Personnel File – Kristine Schares
- United Fire Group, Inc. – Annual Incentive Plan
- United Fire Group Employee Bonus Plan
- United Fire Claim Objectives Documents

---

[1] UF000067-69
[2] UF000073-79

- Legal Expense Control - United Fire Strategy & Measurement
- Loss Adjustment Expense Control - United Fire Strategy & Measurement
- Medical Cost Containment - United Fire Strategy & Measurement
- Alternative Dispute Resolution - United Fire Strategy & Measurement
- Subrogation Recoveries - United Fire Strategy & Measurement
- Agency Relations - United Fire Strategy & Measurement
- Claim System Enhancement - United Fire Strategy & Measurement
- United Fire Employee Handbook
- United Fire Bad Faith Presentations
- Bertelsen v. Allstate Ins. Co., 796 N.W. 2d 685 (2011)
- 45 C.F.R., Parts 160-164
- S.D.C.L., §58-33-67
- Top 100 P&C Insurance Groups – Attached to this report as Exhibit A

Methodology

This expert report and opinion is based upon my education, training, and experience in the insurance industry, my knowledge and experience of liability claims adjusting, my knowledge and experience of insurance coverage, my knowledge and experience of insurance claim adjusting and file handling, my knowledge and experience of supervising/managing claim adjusters, and my knowledge of regulatory standards applicable to insurance claims handling.

In preparing this report, my methodology has included:

> Reviewing the documented facts and circumstances of Debbie's claim/s.

> Reviewing Debbie's United Fire insurance policy declarations/applicable insurance coverage.

> Reviewing the appropriateness, or lack thereof, of United Fire's dealings with Debbie.

> Reviewing/comparing United Fire's conduct to accepted insurance industry claim handling customs and practices.

I have applied this methodology to the facts of this case in arriving at my opinions. In doing so, my review and reporting methodology also takes into consideration the set of facts and circumstances in a sequence which United Fire would have had opportunity to learn and process the same information, or in the sequence United Fire/its claim handlers ought to have learned, and processed the same information, using standard well-established investigation methods and procedures common to the insurance industry.

Overall Findings/Opinions/Conclusions

1. On May 24, 2011, Debbie was involved in an automobile accident on Interstate 29 near Sioux Falls, South Dakota. Debbie was driving her 2011 Chevrolet Silverado northbound in the inside (left) travel lane, when a tire and wheel came

    off of a southbound semi-tractor trailer. The tire/wheel impacted a northbound semi-tractor trailer, and Debbie's vehicle.

2. Debbie was not negligent. The opposing vehicle, a Dakota Land Inc. semi-tractor with trailer, bore 100% of the liability/fault for Debbie's damages. Dakota Land Inc.'s insurer, Liberty Mutual, promptly accepted liability.

3. Debbie sustained front end collision damage to her 2011 Chevrolet Silverado.

4. Dakota Land Inc.'s insurer, Liberty Mutual, settled/paid Debbie's vehicle damage claims.

5. Debbie's insurer, United Fire, opened and reserved Medical Payments coverage and began to process said claim, but thereafter refused to evaluate or pay Medical Payments benefits unless/until Debbie signed United Fire's objectionable "Authorization for Release of Medical Information" form.

6. Debbie found objectionable paragraphs in the United Fire "Authorization for Release of Medical Information" form, redacted those paragraphs, and signed the form.[3] Debbie also signed a FORM CMS-1500 release of medical information form with her treating doctor.

7. United Fire refused to accept Debbie's redacted "Authorization for Release of Medical Information" form, and refused to process and pay the standardized FORM CMS-1500 medical bills received from her medical service providers.

8. The current litigation matters have arisen from United Fire's unreasonable refusal to pay Debbie's Medical Payments claims.

### The May 24, 2011 Accident

The traffic accident occurred in the northbound lanes of I-29 near Sioux Falls, South Dakota, near the Harrisburg exit.[4]

Debbie's recorded statement accident description to her insurer, United Fire, stated in part:

> *Q. And in your own words can you tell me what happened?*
>
> *A. Um I was in the passing lane passing a semi tractor-trailer. I was probably – the front end of my vehicle was probably equivalent to being real close to the*

---

[3] Objectionable refers to the fact that United Fire's "Authorization for Release of Medical Information" form requires signed agreement to the release of otherwise protected information, applicable to mental health, alcohol/drug abuse, HIV/AIDS or all of these, and further provides for United Fire's re-disclosure of said information without further authorization.

[4] Location described as I-29 Northbound, .37 miles N of 273 ST on South Dakota Highway Patrol report.

5 | P a g e

> *back end of his trailer, and as I was passing him, um a wheel, an entire wheel, hub, tire, I mean the rim and the tire came sailing across from the west across the median down to the grass, full in front of me, hit the semi to my right that I was passing, hit the trailer and slammed into me as it deflected off of his trailer.*[5]
>
> *Q. And what happened after that wheel hit your vehicle?*
>
> *A. Well, I automatically braked. I braked as hard as I could thinking I could let it go. I mean you try to think that it's gonna deflect off of the trailer and quickly get into the ditch, but I didn't have the time, and I was boxed in with the trailer being next to me on one side and the ditch being on the other. Uh I braked as hard as I could. All the belongings in my vehicle, my purse and everything, flew far forward and I fishtailed. I felt my vehicle fishtail as I was slamming on the brakes, and the patrol officer and I looked, and we could see where I braked for at least a good 30 feet.*[6]

South Dakota Highway Patrol officer Nick Jensen investigated the accident. His police report narrative [vehicle drivers/owners names inserted for clarity] stated:

> *VEHICLE #2 [Frederick Albert Finch driver/Dakota Land Inc.] WAS SOUTHBOUND ON I-29 NEAR MP71. VEHICLE #1 [Debbie Plucker] WAS NORTHBOUND ON I-29 NEAR MP71. THE TIRES ON THE REAR AXLE OF VEHICLE #2'S TRAILER CAME OFF AND CROSSED THE MEDIAN. ONE OF THE TIRES CROSSED INTO THE NORTHBOUND LANE WHERE IT WAS RUN OVER BY A NORTHBOUND TRACTOR TRAILER. THE TIRE WAS KICKED UP BY THE TRACTOR TRAILER THEN THE TIRE STRUCK VEHICLE #1. IT WAS LATER DISCOVERED THE REAR AXLE OF VEHICLE #2'S TRAILER WAS JUST REPLACE ½ HOUR BEFORE THE CRASH. THE MECHANIC ADMITTED THAT HE MUST HAVE FORGOT TO TIGHTEN THE LUG NUTS.*[7]

*Legal Liability*
Debbie Plucker did not have any negligence or fault for the accident.

Dakota Land Inc., owner of the southbound semi tractor-trailer that lost the wheels, bore 100% fault or responsibility for Debbie Plucker's property damages and bodily injury damages.[8] Dakota Land Inc.'s insurer, Liberty Mutual, agreed that Dakota Land was 100% at fault, and accepted liability. United Fire's claim file notes show that it clearly understood that Liberty Mutual accepted liability:

---

[5] UF000073-79 – Recorded Statement of Debbie Plucker, May 25, 2011.
[6] Id, UF000075-76
[7] UF000068 - South Dakota Highway Patrol Investigating Officer's Report – Case No. 1106470, Officer Nick C. Jensen, May 24, 2011
[8] Dakota Land Inc. bore the responsibility for the mechanical failure because it apparently, performed/provided its own vehicle maintenance/ mechanical work, including the negligent axle installation that caused the accident.

6 | Page

> *5/26/2011 1:28:39 p.m. – SWADE – Sherri Wade*
> *CLMS – 4001032727*
>
> *Derron from Liberty Mutual said they will not let their insd give us a statement but they have accepted liability. Apparently this insd does all the work on their own trucks. His address is PO Box 168328, Irving, TX 75016.*[9]

Liberty Mutual directly handled and paid for the repairs to Debbie Plucker's 2011 Chevrolet Silverado.[10] Liberty Mutual also agreed/stood ready to pay United Fire's Medical Payments coverage subrogation claims for Debbie's bodily injuries.

### *Applicable Automobile Insurance*

Liberty Mutual – Dakota Land Inc.'s Insurer
Liberty Mutual provided Dakota Land Inc.'s liability insurance coverage. Liberty Mutual arranged and paid for Debbie's vehicle damage repairs. Liberty Mutual also agreed to accept (pay for) United Fire's/Debbie's Medical Payments coverage subrogation claims. United Fire's claim notes show that Liberty Mutual alternatively agreed to compensate Debbie's bodily injury claims expenses whether presented as subrogated Medical Payments, or direct bodily injury liability payments to Debbie.[11]

United Fire – Debbie Plucker's Insurer
Debbie Plucker was insured under United Fire automobile insurance policy number 90625038. She had paid her premiums, and the policy was in full force and effect when the accident occurred. The United Fire policy included the following coverage/s:

Vehicles Insured:     2011 Chevrolet Silverado

| Coverages | Policy Limits |
|---|---|
| Bodily Injury Liability | $50,000/$100,000 |
| Property Damage Liability | $50,000 |
| Med Pay | $5,000 |
| Personal Injury Protection | $3,000 |
| Uninsured Motorist B.I. | $50,000/$100,000 |
| Underinsured Motorist B.I. | $50,000/$100,000 |
| Collision | $500 Deductible |
| Comprehensive | $500 Deductible |

---

[9] UF000014-15.
[10] Liberty Mutual's damage estimates, billing, payment documents for Debbie's 2011 Silverado were not contained in the documents reviewed for this report. The United Fire claim notes and Debbie's statement to United Fire verify that Liberty Mutual handled/paid the vehicle damages.
[11] UF00006-7

### Insurance Coverage Triggered by the Accident

Upon receiving notice of the claim, United Fire telephone contacted Debbie; promptly reviewed her claim facts (including intended treatment provider); and correctly determined that Medical Payments and Collision coverage applied.

On May 26, 2011, United Fire/Sherri Wade sent a detailed coverage/claim procedures-specific letter to Debbie. The letter stated, in part:

> *We have reviewed your claim and your policy provides Medical Payments Coverage, which will apply to this accident. Medical Payments Coverage pays for the reasonable and necessary medical treatment that is reported to us and incurred within 3 years of this accident. This coverage is subject to the $5,000.00 limit specified in your policy.*
>
> ---
>
> *In order to handle your medical claim, we will need the Medical Authorization and Treatment Provider List forms completed and returned to us. The Medical Authorization will allow us to obtain the bills and records associated with this loss. The Treatment Provider List simply tells us who you are treating with.*
>
> *Because you are a Medicare recipient, we have also enclosed their Consent to Release Form. This form will allow Medicare to communicate with us so we can monitor your billings.*
>
> *Lastly, it appears that Liberty Mutual is taking care of the damage to your vehicle. If you find out they are not, you have Collision coverage available to you subject to a $500 deductible. Please let us know if you need to use this coverage.*[12]

### Insurance Policy Coverage Was Not Disputed

Debbie's insurance coverage has not been at issue.

Neither Debbie's insurer (United Fire), nor Dakota Land Inc.'s insurer (Liberty Mutual) have questioned coverage, or raised any coverage defenses. Liberty Mutual promptly accepted liability for the accident. United Fire promptly informed Debbie that her Medical Payments as well as Collision coverage applied.

### Debbie Plucker's Injury Treatment
Robin Lanpher, D.C.
Debbie contacted Robin Lanpher, D.C. on May 24, 2011, and began treatment on May 25, 2011. Dr. Lanpher's treatments consisted of examination, diagnostic x-rays, ultrasound therapy, electrical stimulation, and chiropractic manipulation.

---

[12] UF000108

Case 4:12-cv-04075-KES Document 65-16 Filed 01/09/15 Page 9 of 19 PageID #: 1930

8 | Page

Debbie treated with Dr. Lanpher an average of once per week from one day following the May 2011 accident through September 2011.[13] Dr. Lanpher's office submitted treatment bills for each office visit/treatment to United Fire on standardized "FORM CMS-1500 Health Insurance Claim Forms". United Fire admits that:

- *Health Insurance Claim Form 1500 (FORM CMS-1500) is a standardized form approved by the National Uniform Claim Committee and used to process medical bills.*

- *United Fire and Casualty Company accepts Health Insurance Claim Forms (FORM CMS-1500) from submitting healthcare providers.*

- *Health Insurance Claim Form 1500 (FORM CMS-1500) contains the following language: "12. PATIENT'S OR AUTHORIZED PERSON'S SIGNATURE I authorize the release of any medical or other information necessary to process this claim. I also request payment of government benefits either to myself or to the party who accepts assignment."*[14]

United Fire's claim file contains each of Dr. Lanpher's FORM CMS-1500 billings,[15] and also contains Dr. Lanpher's itemized detail description/billing legend of treatments.[16]

Psychotherapy Associates - Family Services, Inc.
On June 14, 2011, Debbie informed United Fire that she was experiencing post-traumatic stress. United Fire's claim handler file note states:

*I spoke with the insd. She is filling out the med auths today. She said she is having some post traumatic stress associated with seeing the wheel fly across the highway. She said she is having some trouble with her fear of driving now. She hopes it will go away and has not tx for this. She said her neck and shoulder still bother her, especially when she is sleeping. She is 1/per week b/c the DC is 90 miles round trip. We discussed the concerns that arise when the stop wasn't forceful enough to tighten her seat belt and weeks later she is still sore. She said maybe she forgot & her seatbelt did tighten.*[17]

Debbie subsequently treated with Psychotherapy Associates/Family Services Inc. for at least 10 treatments date ranging from April 4, 2012 through August 29, 2012.[18]

---

[13] Debbie disclosed to United Fire that she suffered from fibromyalgia and that she had previously treated with Dr. Lanpher. Prior to the May 24, 2011 accident, her treatment regimen was limited to as-needed maintenance care with her follow-up care visits ranging as infrequently as 6 months to a year or more.
[14] Debbie Plucker vs. United Fire & Casualty Company, United States District Court – District of South Dakota Southern Division, DEFENDANT'S ANSWERS TO PLAINTIFF'S REQUESTS FOR ADMISSION TO DEFENDANT (FIRST SET), Answers 16, 17, 18, Civ. 12-4075, July 14, 2014.
[15] UF000080-106
[16] UF000091
[17] UF000014
[18] PA00001-PA00006 CMS 1500 Billings, PA00001-PA00024 Provider Notes

9 | Page

*United Fire Refused to Accept Debbie Plucker's Medical Information Authorization*
United Fire refused to pay Debbie's medical bills, unless she signed United Fire's CD4030 "AUTHORIZATION FOR RELEASE OF MEDICAL INFORMATION" form.[19]

United Fire's medical information release form went beyond what was required to satisfy HIPAA and other reasonable claim processing investigation requirements. United Fire's release paragraphs are shown below. Debbie found either parts, or all of the following paragraphs objectionable, and redacted them (blacked out) before signing the form:

> *Any and all medical records, including reports involving alcohol, drug abuse, or psychiatric treatment or recovery (if applicable) from 5/24/11 to Present.*
>
> *This authorization is valid for 12 months from the date of signing. It may be revoked in writing at any time. A photocopy of this authorization will be treated in the same manner as the original.*
>
> *I acknowledge that information to be released may include material that is protected by state and/or federal law applicable to mental health, alcohol/drug abuse, HIV/AIDS or all of these. My signature authorizes release of all such information as specified above.*
>
> *I acknowledge that information used or disclosed pursuant to this authorization may be subject to re-disclosure by United Fire and Casualty Company without further authorization.*
>
> *Where information has been disclosed from records protected by federal law for alcohol/drug abuse records, by state law for mental health records or HIV/AIDS related records, federal requirements (42 CFR Part 2) and state requirements prohibit further disclosure without the specific written consent of the patient, or as otherwise permitted by such law and/or regulations. Civil and/or criminal penalties may attach for unauthorized disclosure of alcohol/drug abuse, mental health or HIV/AIDS information.*

Debbie redacted the above original release paragraphs to read:

> *Any and all medical records, ~~including reports involving alcohol, drug abuse, or psychiatric treatment or recovery (if applicable)~~ from 5/24/11 to Present.*
>
> *3(three)*
> *This authorization is valid for ~~12~~ months from the date of signing. It may be revoked in writing at any time. ~~A photocopy of this authorization will be treated in the same manner as the original.~~*

---

[19] UF000110

10 | Page

> ~~I acknowledge that information to be released may include material that is protected by state and/or federal law applicable to mental health, alcohol/drug abuse, HIV/AIDS or all of these. My signature authorizes release of all such information as specified above.~~
>
> ~~I acknowledge that information used or disclosed pursuant to this authorization may be subject to re-disclosure by United Fire and Casualty Company without further authorization.~~
>
> ~~Where information has been disclosed from records protected by federal law for alcohol/drug abuse records, by state law for mental health records or HIV/AIDS related records, federal requirements (42 CFR Part 2) and state requirements prohibit further disclosure without the specific written consent of the patient, or as otherwise permitted by such law and/or regulations. Civil and/or criminal penalties may attach for unauthorized disclosure of alcohol/drug abuse, mental health or HIV/AIDS information.~~

Debbie signed the form after making said redactions. At the time she signed the form, she was aware of having shoulder and back soft tissue injuries that would require limited treatment to resolve. Her redacted form gave consent to release of:

> *Any and all medical records from 5/24/11 to present.*[20]

### Debbie Signed a Standardized CMS-1500 Release Form
Debbie also signed a FORM CMS-1500 authorization at Dr. Lanpher's office which provided the medical information release shown below:

> *PATIENT'S OR AUTHORIZED PERSON'S SIGNATURE*
> *I authorize the release of any medical or other information necessary to process this claim. I also request payment of government benefits either to myself or to the party who accepts assignment below.*

### United Fire Uses Its Own Standardized Medical Release Form
United Fire admits that it uses its own AUTHORIZATION FOR RELEASE OF MEDICAL INFORMATION form.[21]

> 22. *Admit that it internally developed the "Authorization for Release of Medical Information"*
>
> *ANSWER: Admit that United Fire developed the "Authorization for Release of Medical Information," Bates Stamp UF110.*

---

[20] UF000114
[21] Debbie Plucker vs. United Fire & Casualty Company, United States District Court – District of South Dakota Southern Division, DEFENDANT'S ANSWERS TO PLAINTIFF'S REQUESTS FOR ADMISSION TO DEFENDANT (FIRST SET), Answers 22, Civ. 12-4075, July 14, 2014.

11 | Page

Although Debbie redacted and signed United Fire's medical release of information form, and additionally signed FORM CMS-1500 medical provider medical information release authorizations without redaction:

- United Fire refused to process/evaluate/pay Debbie's Medical Payments claim.
- United Fire repeatedly told Debbie's agent that Debbie had refused to sign a medical release authorization.
- United Fire reminded Debbie that she had failed to meet policy conditions.
- United Fire initiated policy cancellation proceedings, claiming that Debbie was uncooperative.

*United Fire Received Its Agent's Plea to Pay Debbie Plucker's Med Pay Claim*
United Fire admits that Tom Diefendorf was a United Fire employee, and admits that Diefendorf received agent Kathy Justice's e-mail shown below:[22]

> *From: Kathy Justice [kathy.justice@midconetwork.com]*
> *Sent: Tuesday, July 26, 2011 10:08 a.m.*
> *To: 'Diefendorf, Tom'*
> *Subject: Debbie Plucker – Claim #4001032727*
>
> *Hi Tom:*
>
> *Per our phone conversation this morning, following is a Reader's Digest recap:*
>
> *Our insured was involved in a not-at-fault accident that resulted in her suffering some minor injuries. We submitted a claim under her policy's med pay coverage for her bills which are currently at approximately $400-$500 with 1 or 2 more bills to follow (chiropractor). The at-fault driver's insurer has accepted liability and has already paid for the damages to her car. Sherri Wade is the adjustor assigned. She contacted me the other day asking for my help in getting the medical release signed and explained that the insured had signed one but also had crossed out and "blacked out" several areas on the release making it unacceptable. She said that apparently the insured had some prior alcohol or drug issues that she didn't want them to know about and also said the Debbie must have some mental or emotional issues. I've had this person insured for over 20 years – I'm not aware of any mental or emotional issues. Debbie said that Sharri was "grilling" her about whether or not she had her seat belt on – what difference does it make!!! Also, the insured said Sherri was telling her that her injuries were not consistent with the details of the accident. All of this over a very minor med pay claim that would be paid by subrogation anyway!! Why are we treating our insured like the enemy?*[23]

---

[22] Id, paragraphs 35-39.
[23] Id, exhibit A

Whether or not United Fire responded to the agent's "pertinent written communication" e-mail (which e-mail should have been retained in the claim file and responded to), said e-mail was not found in the claim file.

### *United Fire's Claim Handling, or Lack Thereof*
United Fire and their claim adjusters/claim managers should have clearly understood their claim handling obligations, and should have conformed to those obligations in a manner consistent with accepted customs and practices of the insurance industry. Based upon the initial records reviewed, United Fire failed to do so in my opinion.

United Fire was relieved of its policy obligation to directly pay Debbie's collision damages when Dakota Land Inc.'s insurer promptly agreed to evaluate, settle, and pay Debbie's vehicle damage claims.

United Fire could have been reimbursed for all Med Pay claim loss payments by operation of Dakota Land Inc.'s/Liberty Mutual's prompt agreement to accept liability.

Rather than process, pay, and subrogate Debbie's Med Pay claim to Liberty Mutual, United Fire chose to stubbornly refuse to accommodate an alternative "Authorization for Release of Medical Information" procedure. In doing so, United Fire not only withheld legitimately owed claim payments from Debbie, but also:

- Accused Debbie of violating cooperation conditions of the policy.
- Suggested that Debbie was claiming injuries not consistent with the accident.
- Initiated policy termination procedures.

A principle benefit of first party Medical Payments coverage is to soften the insured's financial impact problems that arise from accidents, by providing prompt and accessible first party medical benefits payments. Debbie was injured badly enough by the "not-at-fault" accident, without being damaged again, by United Fire's refusal to pay her Medical Payments policy benefits.

### *Good Faith Claim Handling Requires Reasonableness*
Good faith claim handling suggests the need to cross-check United Fire's claim handling against at least two reasonableness questions:

- Were United Fire's Medical Payments claim handling actions reasonable?
- Did United Fire's claim handling actions serve the interest of Debbie/the insured?

### *Claim Handling Actions Reasonableness, or Lack Thereof*
Review of the claim file shows that United Fire initially and promptly:
- Telephone contacted Debbie.
- Obtained a recorded liability and damages statement.

13 | Page

- Opened appropriate coverages.
- Set initial coverage reserves.
- Established initial written communication.
- Prepared appropriate initial Claim Status Report/s.

The above initial claim handling actions were reasonable, in my opinion. United Fire, however, severely deviated from reasonable claim handling, in my opinion, when it chose to:
- Refuse to accept a redacted authorization form.
- Alternatively fail to propose a more acceptable revision to the authorization form.
- Refuse to pay legitimate Medical Payments claims.

*The Claim Supervisor's Actions*
Claim Supervisors fill an important role in reviewing claim handler's work, assessing claim handling performance, and setting appropriate corrections in place when necessary. In that regard, United Fire's claim supervisor regularly reviewed and documented the claim file notes:

> *7/29/2011*
> *Called Debbie Plucker as I advised the agent I would do same to discuss the Med Auth and if she does not want to sign, some alternatives.*
>
> *Left a call back message.*
>
> *8/3/2011*
> *I have mailed a letter to Debbie Plucker and e-mailed a copy to her agent, Kathy Justice. No need to leave her messages anymore because she will not answer them as she is angry about us not just paying her bills.*
>
> *8/3/2011*
> *While I was typing that letter Debbie called – I advised her of exactly what I put in the letter. She will obtain records next week as well as a billing log and mail into us.*
>
> *8/10/2011*
> *Received a call from Mary at Dr. Lancer's [sic] office – Debbie told her about the Med Auth problem. Mary said to Debbie that she cannot just mail us the medical records because of HPPA [sic] but that she will talk to the Dr. about just giving Debbie a copy.*
>
> *I advised Mary that the Med Auth Debbie signed for us will not fly as all crossed out etc. Mary said she tried to explain the procedure to Debbie, but she will not just sign a Med Auth.*

14 | Page

> *Again, Mary will see if Dr. Lancer [sic] will just let Debbie have her own records to give us.*
>
> *8/31/2011*
>
> *Sherri-*
>
> *File on Diary*
>
> *It appears that Medicare has accepted our notice – Debbie either sends her bills into us w/the records or we wait for subro from Medicare and pay accordingly.*
>
> *I've discussed w/agent and said we need cooperation from Debbie.*
>
> *The agent advised that Debbie prefers that you do not call her again so if you have to call for anything -- send file to me and I will help.*
>
> *This is a small file so not going to make a big deal out of Debbie's refusal to help us help her--we have a QR in the works and she said she was canceling us anyway.*
>
> *Thanks,*

Debbie did as she promised in her 8/3/2011 discussion with United Fire's claim supervisor. She went to Dr. Lanpher's office on 8/10/2011 and attempted to have her bills/records direct mailed to United Fire. Dr. Lanpher's office was willing to do so, but United Fire's supervisor declined direct mailing, citing its dissatisfaction with the redacted release.

United Fire's Supervisor provided only two alternatives for Debbie:

- Sign United Fire's objectionable, non-redacted release, or
- Require Debbie to obtain the bills/records, and direct mail them to United Fire.

Dr. Lanpher's assistant agreed to ask Dr. Lanpher if she could give the treatment records to Debbie, but strongly recommended that Lanpher Chiropractic Office direct mail all information directly to United Fire.[24] United Fire could have cooperated, could have accepted the redacted and CMS-1500 releases already in place, or could have proposed an alternative release that met both parties needs. United Fire chose to dump its claim protocol problem back to Debbie, rather than choosing to assist her with her Medical Payments claim.

---

[24] Lanpher's recommendation is standard operating procedure for most medical billing. Debbie had to travel 90 miles to Lanpher for her weekly treatment, and would have needed to gather Lanpher's bill and/or records each week to send to United Fire.

15 | Page

Review of United Fire's claim file shows that it received all of Dr. Lanpher's FORM CMS-1500 billings, yet United Fire chose not to pay any of Debbie's Medical Payments claims.[25]

*United Fire's Claim Handling Served Its Interests, not Debbie's/Its Insured's Interests*
United Fire must accept the documented facts that:

- Debbie had paid her United Fire insurance premiums.
- Her Medical Payments claims were clearly covered.
- The treatment she received was reasonable.
- She disagreed with signing an over-reaching medical authorization form.
- She signed United Fire's medical authorization, with redactions relevant to the circumstances of her claim.

United Fire accused Debbie of being uncooperative when she refused to sign United Fire's over-reaching "Authorization for Release of Medical Information" form. Debbie's redaction and signing of said form still agreed to give United Fire:

*Any and all medical records, ~~including reports involving alcohol, drug abuse, or psychiatric treatment or recovery (if applicable)~~ from 5/24/11 to Present.*

Although United Fire admits that it developed said "Authorization for Release of Medical Information" form, and further admits that said form failed to show a valid OMB control number,[26] United Fire still persisted in refusing to pay Debbie's Medical Payments coverage claim.

United Fire's claim handling actions clearly served its own financial interests, while depriving Debbie Plucker of the benefits of her Medical Payments coverage, in my opinion.

*Subrogation Potential*
United Fire had Liberty Mutual's agreement to accept liability. United Fire had the opportunity to make reasonable Medical Payments to Debbie, and the opportunity to subrogate for 100% reimbursement of those Medical Payments. United Fire declined to do so.[27]

---

[25] UF000067-000106

[26] Debbie Plucker, a Medicare recipient (disability status), apparently did not have a responsibility to respond to United Fire's form for Medicare purposes because said form did not display an OMB control number.

[27] Subrogation is defined as - The right of an insurer who has taken over another's loss also to take over the other person's right to pursue remedies against a third party.

16 | Page

### *Outcome Oriented Claim Handling*
United Fire's failed claim handling must be evaluated according to the totality of the claim circumstances.

- United Fire's/Debbie's Medical Payments coverage was triggered by the accident.
- Debbie's Medical Payments claim was easy to understand, and simple to evaluate.
- Liability was 100% favorable to Debbie, and promptly accepted as such by the opposing insurer.
- United Fire's payment exposure was limited to subrogable Medical Payments coverage.

United Fire should have been able to investigate, fairly evaluate, reasonably settle/pay, and subrogate Debbie's Medical Payments claim within the $5,000 policy limit, and within the 3 year policy coverage timeframe.

Instead, United Fire refused to provide a reasonable alternative for its rigid Medical Payments medical authorization claim handling protocol.

The net result was that rather than paying Debbie's benefits for a relatively simple claim, instead United Fire:

- Accused Debbie of being unreasonable.
- Told Debbie her injuries weren't consistent with the accident.
- Told her agent that apparently Debbie had some prior alcohol or drug issues that she didn't want United Fire to know about, and also
- Told her agent that Debbie must have some mental or emotional issues.
- Denied, or withheld payment of Debbie's claim.
- Initiated QR (review for potential cancellation of Debbie's policy).

Such a result of United Fire's claim handling was unacceptable and reprehensible, in my opinion.

### *Claim Departments Should Not Be Profit Centers*
Claim handler's job performance, merit rating, or salary assessment, should be measured against, and or based upon reasonable standards, a few of which include, but are not limited to: good customer service, timeliness, thorough investigation, accurate evaluation, prompt/fair claim resolution, continuing training improvement, etc.

Claim Departments/claim handlers have little or no control over the nature and volume of claims that are received from year-to-year, yet some insurers choose to award, reward, or withhold compensation based upon achievement of aggressive, pre-set corporate financial goals. Such compensation systems can motivate inappropriate claim handling behaviors.

17 | Page

> *Show me a company's various compensation plans, and I'll show you how its people behave.*[28]

Review of United Fire's various corporate financial targets and goals have the potential of driving questionable claim handling practices behavior. For example, some of United Fire's financial incentives include, but are not limited to:

- Employee Bonus Plan that sets threshold, target, and gold club goals for the achievement of aggressively low corporate Loss Ratio's.[29]

- Annual Incentive Plan that measures/awards financial goal achievements.

- Claim Objectives with strategies to achieve year-to-year financial measurement cost reduction improvements for Loss Expense Control, Loss Adjustment Expense, Medical Cost Containment, etc.

Conclusion

Debbie Plucker's Medical Payments claim should have been a relatively simple process to investigate, evaluate, settle, and subrogate.

United Fire was presented with an insured client who was unwilling to sign an over-reaching authorization form.

Instead of receiving satisfaction and payment of her claim, Debbie received ridicule, effective claim denial, and the prospect of having to find another insurer. Debbie's agent attempted to assist with her claim, took the time to send a detailed e-mail to United Fire's Tom Diefendorf (attempting to get payment resolution), and concluded the e-mail by asking United Fire/Mr. Diefendor: "Why are we treating our own insured like the enemy?"[30] The e-mail was not found in the claim file, which leads to the question whether manipulation of the claim file content occurred. The e-mail was a pertinent communication which should have been used to correct claim handling deficiencies, and included in the claim file. Instead, the e-mail was apparently discarded.

United Fire's claim handling protocol was based upon rigid adherence to its own procedures without consideration for Debbie's legitimate claim recovery needs. United Fire appears to have given preference to its financial interests over and above the financial interests of its insured, Debbie Plucker.

It should have been clearly foreseeable from United Fire's perspective that rejecting Debbie's concerns with the medical authorization; making unreasonable/subjective

---

[28] "How to Be a Good Leader", Newsweek Magazine, Jack Welch, April 4, 2005.

[29] See Exhibit A – Top 100 Property & Casualty Insurance Groups ranked by Net Premiums Written for Combined Ratio (Loss + Expense Ratios) actual comparisons..

[30] See Footnote 23, page 12. E-mail also presented as Exhibit E, Case No. CV 04075-KES, Document 39-5, filed March 10, 2014.

assumptions; and denying payment for legitimate Medical Payments claims would bring about unnecessary consequences for Debbie such as:

- Forcing Debbie to retain an attorney to protect her financial interests.
- Causing Debbie to incur otherwise avoidable attorney fees, which typically cost 1/3 or more of the settlement, plus costs for plaintiffs.
- Depriving Debbie payment of her policy benefits.
- Needlessly elevating Debbie's frustration, worry, and concern arising from her worsening physical and financial circumstances caused first by Dakota Land's negligence, and made worse by United Fire's refusal to settle a simple Medical Payments claim.
- Potentially precipitating bad faith claim/s litigation.

This report is subject to revision, addition, or modification based upon additional testimony, documents, or materials I may receive.

Sincerely,

Paul Brenkman