UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| DEBBIE PLUCKER,<br><br>        Plaintiff,<br><br>    vs.<br><br>UNITED FIRE & CASUALTY COMPANY,<br><br>        Defendant. | CIV. 12-4075-KES<br><br><br>ORDER DENYING PLAINTIFF'S<br>MOTION FOR PARTIAL SUMMARY<br>JUDGMENT AND DENYING<br>DEFENDANT'S MOTION FOR<br>SUMMARY JUDGMENT |

Plaintiff, Debbie Plucker, brought this action against defendant, United Fire & Casualty Co., for breach of contract and bad faith stemming from United Fire's delayed payment of Plucker's medical bills following a vehicular accident. Plucker moves for partial summary judgment on her breach of contract claim and misrepresentation. United Fire moves for summary judgment on Plucker's breach of contract and bad faith claims. For the following reasons, the court denies Plucker's motion for partial summary judgment and denies United Fire's motion for summary judgment.

**BACKGROUND**

The undisputed facts are as follows: Debbie Plucker had an automobile insurance policy with United Fire & Casualty Co. The policy covered Plucker's 2011 Chevrolet Silverado pickup and provided up to $5,000 in medical coverage. The policy went into effect March 30, 2011, and was set to expire on September 30, 2011.

On May 24, 2011, Plucker was driving her vehicle north on Interstate 29 near Sioux Falls, South Dakota. A semi-tractor trailer was driving south across the median. As the semi-tractor trailer approached, its tire and rim came off the trailer's axel, crossed the median, bounced off another semi-tractor trailer, and hit the front of Plucker's vehicle. Plucker sustained bodily injury as a result of the accident.

Plucker notified United Fire about the collision. A United Fire representative reviewed Plucker's claim and determined that medical payment and collision coverage applied. As a result of the collision, Plucker sought medical treatment from Dr. Rob Lanpher. Plucker treated exclusively with Dr. Lanpher for her injuries through 2011 and into 2012.

Under the terms of the insurance policy, Plucker had to authorize United Fire to obtain her medical records. The policy states:

> We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:
> . . .
> B. A person seeking coverage must:
>    1. Cooperate with the investigation, settlement or defense of any claim or suit.
>    . . .
>    4. Authorize us to obtain:
>      a. Medical reports; and
>      b. Other pertinent records.
>    5. Submit a proof of loss when required by us.

Docket 56-1 at 4.

After the accident, United Fire mailed Plucker an "Authorization for Release of Medical Information" and a "Medical Provider List." Accompanying both documents was a letter from United Fire that stated in part, "In order to

handle your medical claim, we will need the Medical Authorization and Treatment Provider List forms completed and returned to us. The Medical Authorization will allow us to obtain the bills and records associated with this loss." Docket 56-2 at 56.

The parties agree the medical release would have allowed United Fire to access Plucker's medical records related to the accident. The form as originally written, however, also would have allowed United Fire to obtain "[a]ny and all medical records, including reports involving alcohol, drug abuse, or psychiatric treatment or recovery (if applicable) from 5/24/11 to Present." Docket 56-2 at 58. The release was valid for "12 months from the date of signing" and contained the following provisions:

> I acknowledge that information to be released may include material that is protected by state and/or federal law applicable to mental health, alcohol/drug abuse, HIV/AIDS or all of these. My signature authorizes release of all such information as specified above.
>
> I acknowledge that information used or disclosed pursuant to this authorization may be subject to re-disclosure by United Fire and Casualty Company without further authorization.
>
> Where information has been disclosed from records protected by federal law for alcohol/drug abuse records, by state law for mental health records or HIV/AIDS related records, federal requirements (42 CFR Part 2) and state requirements prohibit further disclosure without the specific written consent of the patient, or as otherwise permitted by such law and/or regulations. Civil and/or criminal penalties may attach for unauthorized disclosure of alcohol/drug abuse, mental health or HIV/AIDS information.

*Id.*

Plucker later signed and returned United Fire's medical release after making multiple edits. First, Plucker blacked out language relating to prior

3

alcohol use, drug abuse, and psychiatric treatment. Docket 18-31 at 2. Second, Plucker limited the validity of the release to three months. *Id.* Third, Plucker redacted the three provisions quoted above. *Id.* Last, Plucker added language stating, "Only Original is Valid. No copies Are Valid. Must Be Signed In 'Red Ink' to be Valid." *Id.*

After receiving the redacted release, United Fire notified Plucker that it could not accept the form because of the redactions; however, United Fire never submitted the redacted release to Dr. Lanpher.[1] Sometime after Plucker submitted the redacted release, a United Fire representative and Plucker talked about Plucker obtaining her own medical records, but Plucker did not submit her medical records to United Fire until after this litigation started.

Throughout Plucker's treatment, Dr. Lanpher submitted Plucker's medical bills to United Fire. Dr. Lanpher submitted his bills using a 1500 Health Insurance Claim Form (1500 Claim Form).[2] Each 1500 Claim Form states, "I authorize the release of any medical or other information necessary to process this claim." Docket 18-28 at 2. Following this language, each one of Dr. Lanpher's forms also stated that there was a "signature on file." *Id.* At no point did United Fire accept the 1500 Claim Form as a valid medical release under the insurance policy.

---

[1] Plucker argues Dr. Lanpher would have accepted the redacted medical release. In a letter dated August 29, 2012, Dr. Lanpher acknowledged that he would have accepted Plucker's redacted release and that he would have sent Plucker's medical records to United Fire if he had received the redacted release. Docket 69-3 at 2.
[2] Plucker argues the 1500 Claim Form "is standard in the insurance industry" and is used by "Medicare to obtain medical records related to [those] bills." Docket 64 at 7.

During the claims handling process, Plucker's insurance agent, Kathy Justice, sent an email to United Fire. In the email Justice expressed frustration with United Fire's claim handling process, and Justice wrote in part, "Why are we treating our own insured like the enemy?" and "here's an example of what we don't want." Docket 65-9 at 2.

In their briefs, both parties acknowledge that United Fire's employee bonus program could potentially encourage employees to deny claims. *See* Docket 70 at 4-5; Docket 64 at 2-5.

On April 23, 2012, Plucker filed a complaint alleging breach of contract and bad faith and seeking compensatory and punitive damages. Docket 1. On May 8, 2012, Plucker signed an unredacted medical release for Dr. Shelley Sandbulte, who treated Plucker's post-traumatic stress disorder following the accident. Docket 56-5. On July 26, 2012, Plucker signed an unredacted medical release for Dr. Lanpher. Docket 56-7. Both offices released the pertinent medical records to Plucker's attorney.

On November 28, 2014, Plucker moved for partial summary judgment on the issues of breach of contract and misrepresentation. Docket 51. On the same day, United Fire moved for summary judgment on Plucker's breach of contract and bad faith claims. Docket 55.

## LEGAL STANDARD

Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party can meet this

burden by presenting evidence that there is no dispute of material fact or that the nonmoving party has not presented evidence to support an element of its case on which it bears the ultimate burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). To avoid summary judgment, "[t]he nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.' " *Mosley v. City of Northwoods, Mo.*, 415 F.3d 908, 910 (8th Cir. 2005) (quoting *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995)).

Summary judgment is precluded if there is a dispute in facts that could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). For purposes of a summary judgment motion, the court views the facts and the inferences drawn from such facts "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).

## DISCUSSION

Federal jurisdiction in this action is predicated on diversity of citizenship. Therefore, the substantive law of South Dakota governs this case. *Hammonds v. Hartford Fire Ins. Co.*, 501 F.3d 991, 996 n.6 (8th Cir. 2007) (citing *Erie R.R. Co. v. Thompkins*, 304 U.S. 64, 78 (1938)) ("We apply South Dakota substantive law because this diversity action was brought in the District of South Dakota, and the district court sitting in diversity applies the substantive law of the state in which it is located.").

## I.      Breach of Contract

Both parties move for summary judgment on Plucker's breach of contract claim. Plucker argues United Fire breached the insurance contract by failing to accept the redacted medical release, by failing to utilize the 1500 Claim Forms, and by requesting that Plucker obtain her own medical records. United Fire, in contrast, argues Plucker caused any delay in payment because she refused to sign an unredacted medical release and failed to provide her medical records.

To prevail on a breach of contract action, a plaintiff must prove three elements: "(1) an enforceable promise; (2) a breach of the promise; and, (3) resulting damages." *Bowes Constr., Inc. v. S. Dakota Dep't of Transp.*, 793 N.W.2d 36, 43 (S.D. 2010) (quoting *Guthmiller v. Deloitte & Touche, LLP*, 699 N.W.2d 493, 498 (S.D. 2005)). The determination of whether a party has breached a contract "presents a pure question of fact that the trier of fact alone may decide." *Moe v. John Deere Co.*, 516 N.W.2d 332, 335 (S.D.1994) (quoting *Concise Oil & Gas v. La. Interstate Gas Corp.*, 986 F.2d 1463, 1496 (5th Cir. 1993)); *Weitzel v. Sioux Valley Heart Partners*, 714 N.W.2d 884, 894 (S.D. 2006).

### A.      Ambiguity

"The construction of a written contract is a question of law." *Alverson v. Nw. Nat. Cas. Co.*, 559 N.W.2d 234, 235 (S.D. 1997) (quoting *Bell v. E. River Elec. Power Coop. Inc.,* 535 N.W.2d 750, 754 (S.D. 1995)). The language of the contract is given its "plain and ordinary meaning" unless the language is ambiguous. *Am. State Bank v. Adkins*, 458 N.W.2d 807, 809 (S.D. 1990) (citing

7

Restatement (Second) of Contracts § 202(3)). Contract language is ambiguous if a "genuine uncertainty exists as to which of two or more meanings is correct." *Id.* No ambiguity exists, however, if the parties simply "differ as to the interpretation of the contract." *Cain v. Fortis Ins. Co.*, 694 N.W.2d 709, 713 (S.D. 2005). If contract language is not ambiguous, the insurance policy "cannot be enlarged or diminished by judicial construction." *Econ. Aero Club, Inc. v. Avemco Ins. Co.*, 540 N.W.2d 644, 645 (S.D. 1995).

Plucker's insurance policy is not ambiguous. Under the terms of the policy, Plucker had to "cooperate" with United Fire's investigation and settlement of the claim and "authorize" United Fire to obtain her medical records. The Oxford Dictionary defines "cooperate" as "[a]ct jointly; work toward the same end"[3] and "authorize" as "[g]ive official permission for or approval to (an undertaking or agent)."[4] Thus, under the terms of her contract, Plucker had to (1) work with United Fire to resolve her claim and (2) give United Fire legal permission to obtain her medical records. The question that remains is whether Plucker fulfilled these obligations.

### B.    Plucker's Motion for Partial Summary Judgment

#### 1.    Medical release form

Plucker argues United Fire should have accepted either the 1500 Claim Forms or her redacted medical release. To support her assertion, Plucker

---

[3] Oxford Dictionaries, http://www.oxforddictionaries.com/us/definition/american_english/cooperate (last visited August 26, 2015)
[4] Oxford Dictionaries, http://www.oxforddictionaries.com/us/definition/american_english/authorize (last visited August 26, 2015).

argues the 1500 Claim Form is "standard in the insurance industry" and that Medicare routinely uses the form to obtain medical records related to billing. Docket 68 at 8; *Metcalf v. Blue Cross Blue Shield of Mich.*, 2013 WL 4012726, Civ. No. 11-1305-ST (D. Or. Aug. 5, 2013); 72 FR 66222. Plucker also asserts the original medical release was overly broad and that her redactions merely brought the release within the terms of her insurance policy. Docket 54 at 17.

To support her claim, Plucker relies on two cases, which state that an insurer has a duty to investigate the insured's claims. *Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152 (9th Cir. 2002); *Mariscal v. Old Republic Life Ins.* 50 Cal.Rptr.2d 224, 225 (Cal. Ct. App. 1996). In *Amadeo* and *Mariscal*, the courts were deciding whether an insurer properly investigated the facts of the insured's underlying claim. In *Amadeo*, the court held it was improper for an insurance company to interpret the contract term "regular occupation" as "unemployed." *Amadeo*, 290 F.3d at 1162-63. In *Mariscal*, the court held that it was improper for an insurance company to find its insured died from a heart attack instead of the automobile accident immediately preceding the insured's death. *Mariscal v. Old Republic Life Ins. Co.*, 50 Cal. Rptr. 2d 224 (C.D. Cal. 1996). Neither case addresses the sufficiency of a medical release for the purpose of obtaining medical records. When viewing the facts and inferences in the light most favorable to United Fire, there are disputed issues of material fact as to whether United Fire was trying to conduct a proper investigation of Plucker's claim, whether Plucker was hampering the investigation by not signing an unredacted release, or whether Plucker's release or the 1500 Claim

9

Form complied with the terms of the insurance contract. Because issues of material fact remain, summary judgment is denied.

### 2.      Request for medical records

Plucker asserts United Fire breached the insurance contract "when it told Ms. Plucker to gather her own medical records." Plucker argues that the insurance policy "unequivocally required United Fire to obtain those records." For legal support, Plucker cites to an Eighth Circuit Court of Appeals opinion, which held that an insurance company acted in bad faith when it shifted the burden of claim investigation onto the insured. *Bilden v. United Equitable Ins. Co.*, 921 F.2d 822, 829 (8th Cir. 1990).

When viewing the facts in the light most favorable to United Fire, a disputed issue of material fact exists as to whether United Fire was shifting its claim investigation duty to Plucker or whether United Fire merely requested that Plucker obtain her own medical records in lieu of signing an unredacted release. A jury could find United Fire tried to accommodate Plucker, not force her to investigate her own claim. Because questions of material fact remain as to whether United Fire breached its contract with Plucker, summary judgment is denied.

### C.      United Fire's Motion for Summary Judgment

United Fire argues it did not breach its contract with Plucker because any delay in the payment of benefits was caused by Plucker's failure to abide by the contract. United Fire contends that because Plucker failed to provide an unredacted medical release and delayed in providing her own medical records,

United Fire was not obligated to pay her medical claims until one of those two conditions was met. *See Bertelsen v. Allstate Ins. Co.*, 796 N.W.2d 685, 694 (S.D. 2011).

When viewing the facts and inferences in the light most favorable to Plucker, United Fire's motion cannot be granted. Under the terms of the insurance policy, Plucker needed to cooperate with United Fire and authorize it to obtain her medical records. Once Plucker fulfilled these obligations, United Fire was required to pay her medical bills. Based on the facts, a jury could find that Plucker did authorize United Fire to obtain her medical records and that United Fire still failed to pay her claim. For example, a jury could find that the 1500 Claim Forms provided a valid medical release or that Plucker's redacted release was acceptable because Dr. Lanpher would have accepted the redacted release. Under either scenario, a jury could find in Plucker's favor. Because questions of material fact are unresolved, summary judgment is denied.

## II.    Misrepresentation

Plucker argues summary judgment should be granted in her favor on the issue of misrepresentation. Plucker claims United Fire "misrepresented numerous facts and policy provisions" during the handling of Plucker's claim. Specifically, Plucker argues United Fire made misrepresentations when it said no one would accept Plucker's redacted medical release, when it sent a medical release that was broader than the underlying policy, and when it failed to tell Plucker about Dr. Lanpher's 1500 Claim Forms. United Fire argues that

Plucker did not plead a cause of action for misrepresentation and that Plucker cannot raise a new cause of action on a motion for summary judgment.

Under *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004), Plucker cannot raise a new cause of action on a motion for summary judgment. *See also Mueller Pallets, LLC v. Vermeer Corp.*, No. CIV 09-4016, 2011 WL 4458833, at *3 (D.S.D. Sept. 23, 2011) (citing *Gilmour* with approval). Because Plucker has not pleaded misrepresentation in her complaint, she cannot raise a claim for misrepresentation now.

## III.   **Bad Faith**

### A.   **Reasonableness**

United Fire moves for summary judgment in its favor on Plucker's bad faith claim and contends that its decision to delay payment was reasonable. Plucker responds that questions of material fact exist as to whether United Fire acted in bad faith when it delayed payment.

The South Dakota Supreme Court laid out the test for whether summary judgment is appropriate in a first-party bad faith claim in *Dakota, Minn. & E. R.R. Corp. v. Acuity*, 771 N.W.2d 623 (S.D. 2009).

> [T]here must be an absence of a reasonable basis for denial of policy benefits [or failure to comply with a duty under the insurance contract] and the knowledge or reckless disregard [of the lack] of a reasonable basis for denial, implicit in that test is our conclusion that the knowledge of the lack of a reasonable basis may be inferred and imputed to an insurance company where there is a reckless disregard of a lack of reasonable basis for denial or a reckless indifference to facts or to proofs submitted by the insured.
>
> Under these tests of the tort of bad faith, an insurance company, however, may challenge claims which are fairly debatable and will

12

be found liable only where it has intentionally denied (or failed to
process or pay) a claim without a reasonable basis.

*Id.* at 629 (quoting *Walz v. Fireman's Fund Ins. Co.*, 556 N.W.2d 68, 70 (S.D.
1996)); *see also McElgunn v. Cuna Mut. Group*, No. CIV. 06-5061-KES, 2009 WL
1254657, at *1 (D.S.D. May 4, 2009). First-party bad faith is an intentional tort
and occurs when an insurance company consciously engages in wrongdoing
during its processing or paying of policy benefits. *Hein v. Acuity*, 731 N.W.2d
231, 235 (S.D. 2007). But if an insured's claim is fairly debatable either in fact
or law, an insurer cannot be said to have denied the claim in bad faith. *Dakota,
Minn. & E. R.R. Corp.*, 771 N.W.2d at 630. "The questions of whether the
insurer's actions were unreasonable or whether the claim was fairly debatable
must be viewed at the time the insurer made the decision to deny or litigate the
claim, rather than pay it." *Id.* "The question of whether an insurer has acted in
bad faith is generally a question of fact." *Bertelsen*, 833 N.W.2d at 554.

United Fire argues it promptly and extensively reviewed Plucker's claim.
Docket 58 at 11. In *Bertelsen*, the South Dakota Supreme Court explained that
an insurance company has a right to investigate an insured's claim, and "[a]n
insurer may request an insured's medical records . . . ." *Bertelsen*, 796 N.W.2d
at 694. *Bertelsen* does not, however, stand for the proposition that an
insurance company can delay payment on an insured's claim when the insured
has complied with the terms of the contract.

A jury could find that United Fire had no reasonable basis for delaying
payment on Plucker's claim. For example, the jury could find that the 1500
Claim Form is standard in the industry and that United Fire should have used

13

the 1500 Claim Form to obtain Plucker's medical records. Alternatively, the jury could find Plucker's redacted medical release was valid because Dr. Lanpher would have accepted the document. Under either scenario, the jury could find that United Fire had no reasonable basis for delaying payment of Plucker's medical bills because she complied with the terms of the contract.

A jury could also find United Fire knew it had no reasonable basis for delaying Plucker's claim. Evidence of this motivation could be inferred from an email written by Plucker's insurance agent and in United Fire's employee compensation policies. In the email, Plucker's agent expresses frustration with United Fire's handling of Plucker's claim and writes, "Why are we treating our own insured like the enemy?" and "here's an example of what we don't want." Docket 65-9 at 2. Such language could be viewed as evidence of improper motives by United Fire. Additionally, evidence that employee bonuses are tied to the company's profitability could lead a jury to find that United Fire's actions were unreasonable and based solely on profit.

Because a jury could find that United Fire unreasonably delayed paying Plucker's claim and that United Fire knew that it had no reasonable basis for delaying Plucker's claim, summary judgment is denied.

### B.    Issue of First Impression

United Fire also argues that Plucker's claim raises an issue of first impression. Docket 58 at 12. United Fire cites to *Mudlin v. Hills Materials Co.*, 742 N.W.2d 49, 53-54 (S.D. 2007) for the proposition that an insurer cannot "be penalized for denying payment based on an issue of first impression." *Id.*

14

Although this is an accurate statement of the law, it is inapplicable to Plucker's case. United Fire is not arguing a particular area of the law is unclear or reasonably debatable, but rather that the specific interpretation of the contract raises a novel issue. As such, Plucker's claim does not raise an issue of first impression, and summary judgment is denied.

## CONCLUSION

Genuine questions of material fact exist on plaintiff's breach of contract and bad faith claims, and partial summary judgment in favor of Plucker is denied. Summary judgment in favor of United Fire is likewise denied. Accordingly, it is

ORDERED that plaintiff Debbie Plucker's motion for partial summary judgment (Docket 51) is denied.

IT IS FURTHER ORDERED that defendant United Fire & Casualty Co.'s motion for summary judgment (Docket 55) is denied.

Dated September 28, 2015.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE