UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| DEBBIE PLUCKER,<br><br>    Plaintiff,<br><br>vs.<br><br>UNITED FIRE & CASUALTY COMPANY,<br><br>    Defendant. | Civ. 12-4075<br><br>BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEY'S FEES |

  The Plaintiff, Debbie Plucker, by and through her counsel, submits the following Brief in Support of her Motion for Attorney's Fees pursuant to SDCL 58-12-3.

**I.  Debbie Plucker Should be Granted Reasonable Attorney Fees.**

  **A.  Defendant Acted Unreasonably in Numerous Ways that Contributed to the Denial of Plaintiff's Claim.**

  Debbie Plucker was injured when a wheel came off a semi and struck the vehicle she was driving. She went to treat with chiropractor Rob Lanpher the following day. Debbie reported the accident to her insurance agent, who notified Defendant, her insurer. Debbie had $5,000 of medical payments coverage under her insurance policy with Defendant. Debbie was required under the policy to authorize Defendant to obtain her medical records. Ex. 2 at 111. Debbie was concerned about the breadth of Defendant's medical release when she received it. Ex. 2 at 110. It was blank; it said a copy could be used to obtain her records; it allowed Defendant to get alcohol and mental health counseling records; and it allowed Defendant to re-disclose her records without notice. *Id.*

  Debbie crossed off the parts of the release that concerned her, signed it, and returned it to Defendant. Ex. 2 at 114. Defendant received the release, called Debbie, and told her that no

1

medical provider would ever accept it.  Ex. 2 at 24.  Defendant's statement was not true.  Dr. Lanpher testified he would have accepted the release.  *See also* Ex. 32 (Dr. Lanpher's letter confirming he would have accepted the release and provided records to Defendant).  Defendant's failure to call Dr. Lanpher to see if he would have accepted the release; its failure to send the release to Dr. Lanpher; and its untrue statement to Debbie that no medical provider would ever accept the release were not reasonable.

Debbie then had other phone contact with Defendant.  During one of these phone calls, Defendant told Debbie it would never get repaid from Liberty Mutual, the semi driver's insurance company, for Debbie's medical bills.  Defendant *never* denied telling this to Debbie, this statement was not true, and it was not reasonable for Defendant to make it.

Defendant also asked Debbie to go get her own records at Dr. Lanpher's office.  *See, e.g.* Ex. 2 at 10.  Debbie tried, but Dr. Lanpher told her that his office policy requires Defendant to send a release to get the records.  Defendant knew Debbie could not get her records from Dr. Lanpher.  *See, e.g.* Ex. 2 at 09.  Defendant admitted it knew it had an obligation to help Debbie with her claim and with getting her medical records, but Defendant did nothing to help Debbie get her records.  In fact, Defendant said "the insd does not want to return the medical authorization so we have been unable to process her claim.  Hopefully the Insd will return this form soon." Ex. 2 at 45.  Defendant's statement was not true, and Defendant's actions were not reasonable.

Defendant then said that Debbie was "uncooperative" because she would not sign a blank release, and initiated a process to cancel her coverage.  Ex. 2 at 28.  This was not reasonable.

Debbie contacted her insurance agent, who visited with Defendant about Debbie's concerns.  Debbie's insurance agent discussed Debbie's concerns about the release, about

Defendant's "grilling" Debbie about wearing her seat belt, and about being told "her injuries were not consistent with the details of the accident." *See, e.g.* Ex. 9. Debbie's insurance agent asked, "Why are we treating our own insured like the enemy?" *Id.* Defendant's actions as described in the agent's email were not reasonable.

Even after the conversation and email from Debbie's insurance agent, Defendant did nothing to get Debbie's medical records. Instead, Defendant subsequently reported to Debbie's insurance agent that "The insd has not ever sent her medical authorization to us…." Ex. 2 at 42. As before, this statement was not true, and it was not reasonable for Defendant to say so.

After counsel got involved, Defendant's unreasonable actions continued. Debbie's counsel wrote to Defendant on August 1, 2012, asking Defendant to reconsider its decision to not pay Dr. Lanpher's bills. Ex. 33. Debbie's counsel wrote again on August 29 because he had not heard from Defendant and the bills had still not been paid. Ex. 32. Debbie's counsel wrote again on October 2, reminding Defendant's counsel he had not heard from Defendant and again requesting that Defendant pay the bills. Ex. 35. These actions were not reasonable. Defendant then waited about two and a half more months, until December 12, 2012, to pay Debbie's bills.

None of Defendant's actions described above were reasonable. These actions all contributed to Defendant's refusal to pay Debbie's medical bills. The Jury awarded Debbie $100.00 on her breach of contract claim. The Jury agreed with Debbie that her claim was valid as it ruled against United Fire on the breach of contract claim.

    **B.**    **Attorney Fees are Authorized in this Diversity Case under SDCL § 58-12-3.**

Debbie brings this Motion for Attorney's Fees pursuant to SDCL § 58-12-3. The South Dakota Legislature enacted SDCL § 58-12-3 for the purpose of discouraging insurers from contesting legitimate claims and relieving insureds from some of the financial burden imposed

when an insurer vexatiously or unreasonably refuses to pay the full amount of a loss. *See All Nation Ins. Co. v. Brown*, 344 N.W.2d 493, 494 (S.D. 1984). In relevant part, that statute provides:

> In all actions … commenced against any … insurance company … on any policy or certificate of any type or kind of insurance, if it appears from the evidence that such company … has refused to pay the full amount of such loss, and that such refusal is vexatious or without reasonable cause, … the trial court and the appellate court, shall, if judgment or an award is rendered for plaintiff, allow the plaintiff a reasonable sum as an attorney's fee to be recovered and collected as a part of the costs …

SDCL § 58-12-3. Thus, in order to award attorney fees under this statute, the Court must find "that the insurance company refused to pay the full amount of the insured's loss and that said refusal was either vexatious or without reasonable cause." *Federal Beef Processors, Inc. v. Royal Indemnity Co.*, 2008 WL 4560617 *8 (D.S.D. Oct. 9, 2008) (quoting *Brooks v. Milbank Ins. Co.*, 605 N.W.2d 173, 178 (S.D. 2000)). As the Legislature's use of the directive "shall" further makes clear, whenever it appears from the evidence that an insurer's refusal to pay the full amount of its insured's loss is vexatious or without reasonable cause, an award of reasonable attorney fees is required. SDCL § 58-12-3.

The South Dakota Supreme Court admonishes courts to give this statute a liberal construction in order to effectuate its purpose. *See All Nation*, 344 N.W.2d at 494. Even so, an action for bad faith is "not an action against an insurance company on a policy of insurance within the contemplation of SDCL 58-12-3." *Isaac v. State Farm Mut. Auto Ins. Co.*, 522 N.W.2d 752, 763 (S.D. 1994). Thus, it is not disputed Debbie Plucker can only recover attorney fees associated with her breach of contract claim, and that fees solely related to her bad faith claim against United Fire should not be granted. *See Federal Beef Processors*, 2008 WL 4560617 at *8.

    **C.**    **United Fire's Refusal to Make Medical Payments for Debbie's Loss Owed Under Her Policy was Vexatious or Without Reasonable Cause.**

As the South Dakota Supreme Court has explained, an award of attorney fees under

4

SDCL § 58-12-3 requires a court to determine three things:

> First, whether the insurance company refused to pay the full amount of a loss.
>
> Second, whether the refusal was vexatious or without reasonable cause.
>
> And third, what is a reasonable charge for the work performed to enforce the insurance contract claim, vis-à-vis any other claims jointly brought.

*Biegler v. American Family Mut. Ins. Co.*, 621 N.W.2d 592, 606 (S.D. 2001). There is no dispute that United Fire refused to make payments for Debbie Plucker's loss under her policy "before the commencement of the action" in which judgment has now been entered for the full amount of policy benefits owed. SDCL § 58-12-3. Thus, only the second and third elements remain for this Court's determination.

Although resolved by the Court, the question of whether an insurer's refusal to pay is vexatious or without reasonable cause under SDCL § 58-12-3 is necessarily one of fact. *See Biegler*, 621 N.W.2d at 605; *O'Neill v. Blue Cross of Western Iowa and S.D.*, 366 N.W.2d 816 (S.D. 1985). The South Dakota Supreme Court has routinely affirmed awards of attorney fees under SDCL § 58-12-3 in circumstances comparable to those presently before the Court. For example, in *Lewis v. State Dep't of Transp.*, 667 N.W.2d 283 (S.D. 2003), the Supreme Court affirmed an award of attorneys where a claims administrator, "[i]gnoring the doctor's assessments, and lacking any independent medical opinions to the contrary," nonetheless denied compensation. *Id.* at 292. As the Supreme Court held, such findings established the unreasonableness of the denial and were supported by the weight of the record in that case. *See id*. In *Biegler*, 621 N.W.2d at 606, as well, the Supreme Court affirmed an award of attorney fees under this statute where the insurer did everything it could to "put off" its insured from receiving the benefits of his policy, in that case the benefit of a legal defense provided by the insurer to claims brought against him within his policy.

5

In *Isaac*, an award of attorney fees under SDCL § 58-12-3 was affirmed where the trial court found that the insurer had unreasonably delayed its investigation, settlement, and evaluation and ultimately insisted upon a release of any bad faith claim as a condition of paying benefits. 522 N.W.2d at 763. In *Eldridge v. Northwest G.F. Mut. Ins. Co.*, 221 N.W.2d 16 (S.D. 1974), the South Dakota Supreme Court affirmed an award of attorney fees where the trial court found that "the investigation and adjustment of plaintiff's claim by defendant's agent was incomplete and insufficient and that the refusal of defendant to pay the whole amount of plaintiff's loss was vexatious or without reasonable cause." *Id.* at 21. Finally, in *Sawyer v. Farm Bureau Mut. Ins. Co.*, 619 N.W.2d 644 (S.D. 2000), the Supreme Court affirmed an award of attorney fees where the insurer "failed to conduct a good faith investigation of the Plaintiff's claims," and "denied, minimized and attempted to discourage the claims submitted by the Plaintiff in this case." *Id.* at 652. Defendant's actions here were similar to each of these cases.

Defendant' refusal to investigate, its numerous delays, its lies and untrue statements, and its failure to help its insured get her medical records readily meets or exceeds the standard for vexatious or unreasonable conduct established under SDCL § 58-12-3. As the evidence demonstrated at trial, Defendant acted unreasonably and breached Debbie's contract of insurance numerous times by failing to pay medical payment benefits.

Just as the claims administrator in *Lewis*, 667 N.W.2d at 292, Defendant, while openly "[i]gnoring the doctor's assessments, and lacking any independent medical opinions to the contrary," nonetheless denied compensation and refused to pay Debbie's claim. As in *Sawyer*, 619 N.W.2d at 652, Defendant "failed to conduct a good faith investigation of the Plaintiff's claims," and "minimized" her loss without any explanation, information, or evidence to dispute it. *Id*. at 652. Like the insurer in *Isaac*, 522 N.W.2d at 763, Defendant unreasonably delayed its settlement, and

evaluation after being apprised and repeatedly updated regarding Debbie's accruing losses. And just like in *Eldridge*, 221 N.W.2d at 21, "the investigation and adjustment of plaintiff's claim by defendant's agent was incomplete and insufficient," and, as a result, "the refusal of defendant to pay the whole amount of plaintiff's loss was vexatious or without reasonable cause." Applying South Dakota law, this Court should similarly find that Defendant's refusal to pay Debbie Plucker's loss under her policy in this case was vexatious or without reasonable cause and grant attorney fees under SDCL § 58-12-3.

### D. Awarding Attorneys' Fees is Appropriate Even When A Jury Does Not Find Bad Faith

Defendant may argue that attorneys' fees are inappropriate in this case because the Jury did not find for Debbie on her bad faith claim. The 8th Circuit Court of Appeals has rejected the idea that a plaintiff cannot recover attorney fees on a breach of contract that was either vexatious or without reasonable cause:

> [A] jury's adverse finding on a bad faith claim does not, as a matter of law, preclude a trial court from awarding attorney's fees under § 58-12-3. Rather, just like in those cases where a jury finds an insurer acted in bad faith, a trial court should undertake a separate analysis to determine whether the insurer's refusal to pay was vexatious or without reasonable cause in those cases where a jury finds an insurer did not act in bad faith.

*Bjornestad v. Progressive N. Ins. Co.*, 664 F.3d 1195, 1199 (8th Cir. 2011) (quoting *Tripp v. W. Nat'l Mut. Ins. Co.*, 664 F.3d 1200, 1206 (8th Cir. 2011)). The 8th Circuit Court of Appeals gave three reasons to support its decision:

> (1) the insurer's argument was not supported by the language of the statute; (2) the elements of a bad faith claim are different than the factors a trial court considers when deciding whether to award fees under § 58-12-3; and (3) the different purpose served by a jury verdict on a tort claim of bad faith when compared to the purpose served by a trial court's award of fees on a contract claim under § 58-12-3.

*Bjornestad*, 664 F.3d at 1199 (citing *Tripp*, 664 F.3d at 1206).  Therefore, this Court would be correct in awarding attorney fees as "the statutory fee award [does] not hinge on the outcome of the bad faith claim."  *Tripp*, 664 F.3d at 1207.

### E. The Attorney Fees Detailed in the Accompanying Affidavits Are Reasonable

Finally, the plaintiff respectfully suggests that the attorney's fees sought under SDCL § 58-12-3, as detailed in the accompanying affidavit of her attorney, are reasonable for the work performed in conducting this federal litigation and bringing her breach of contract claim to trial.  As described in the affidavit, the time spent on the bad faith claim was inextricably intertwined with the breach of contract claim.  Both claims were based on the same set of operative facts.  In other words, Plaintiff used the same set of facts and actions of Defendant to support her bad faith claim and her breach of contract action.

Furthermore, as described in the affidavit, the plaintiff's counsel are well qualified attorneys who have experience in insurance litigation, and the hours expended in bringing the breach of contract claim to trial were reasonable and necessary under the circumstances.  As detailed in the billing statement appended to the affidavit, attorney Trzynka's hours were spent primarily handling the drafting and filing of the motions, communicating with the expert, communicating and working with the plaintiff, handling the written discovery and depositions, and preparing for and participating in the trial.  Attorney Bornitz's hours were spent assisting with the claim and preparing for and participating in the trial.

Plaintiff respectfully seeks an award of $143,660.48 as her reasonable attorney fees and sales tax authorized by SDCL § 58-12-3 in successfully bringing her breach of contract claim through trial following Defendant's vexatious or unreasonable conduct and refusal to pay the medical payment benefits owed under the insurance policy she purchased.

Dated this 15th day of April, 2016.

/s/ Michael D. Bornitz
Michael D. Bornitz
Robert D. Trzynka
Cutler & Donahoe, LLP
100 N. Phillips Ave., 9th Floor
PO Box 1400
Sioux Falls, SD  57101-1400
(605) 335-4950
*Attorneys for Plaintiff*

## CERTIFICATE OF COMPLAINCE

In accord with D.S.D. Civ. LR 7.1(B)(1), I certify that this brief complies with the requirements set forth in the Local Rules.  This Brief was prepared using MS Word and consists of 2,579 words.

Dated at Sioux Falls, South Dakota, this 15th day of April, 2016.

/s/ Michael D. Bornitz
*One of the Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on the 15th day of April, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the appropriate parties:

- **Lon Kouri**
  LKouri@mayjohnson.com

- **Eric DeNure**
  edenure@mayjohnson.com

/s/ Michael D. Bornitz
Michael D. Bornitz
Robert D. Trzynka
Cutler & Donahoe, LLP
100 N. Phillips Avenue, 9th Floor
PO Box 1400
Sioux Falls, SD  57101-1400
Telephone:  (605) 335-4950
*Attorneys for Plaintiff*