UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| DEBBIE PLUCKER,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>UNITED FIRE & CASUALTY COMPANY,<br><br>　　　　　Defendant. | 4:12-CV-04075-KES<br><br><br>ORDER DENYING PLAINTIFF'S<br>MOTION FOR ATTORNEY'S FEES |

Plaintiff, Debbie Plucker, brought suit against defendant, United Fire & Casualty Company, for breach of contract and bad faith. A jury trial was held, and the jury found in favor of Plucker on the breach of contract claim and United Fire on the bad faith claim. Plucker now moves for attorney fees under SDCL 58-12-3. The court denies the motion.

**BACKGROUND**

Plucker purchased a car insurance policy from United Fire & Casualty Company. Trial Exhibit 1. The policy included $5000 in medical payments coverage for Plucker if she was injured in an accident. *Id.* at UF004921. While Plucker was driving on Interstate 90, a semi-truck trailer on the other side of the median and traveling in the opposite direction lost a tire. The tire and its rim crossed the median, bounced off of another tractor trailer, and hit the front

of Plucker's car. As a result of the accident, Plucker started treating with Dr. Lanpher, her chiropractor.

Under the terms of the insurance contract, Plucker needed to grant United Fire access to her medical records before she could receive payment for her medical bills. Typically, United Fire got an insured's medical records by having the insured sign a medical release authorizing United Fire to have access to the records. After the accident, United Fire sent Plucker a copy of its standard medical release, but Plucker felt uncomfortable signing the form as written. To alleviate her concerns, Plucker redacted the parts of the medical release that authorized the release of medical records related to prior alcohol use, drug abuse, and psychiatric treatment. Plucker also added language limiting the validity of the release. United Fire did not accept the altered release and told Plucker no medical provider would accept the changes she made to the release.

As an alternative to signing an unaltered medical release, United Fire told Plucker she could submit her own medical records. Plucker attempted to retrieve her records from Dr. Lanpher, but she was unable to get them. Plucker discussed with her insurance agent the problems she was having with United Fire. The insurance agent wrote to United Fire asking, "Why are we treating our own insured like the enemy?" Trial Exhibit 9.

After Plucker hired a lawyer, her lawyer wrote to United Fire three times and asked it to reconsider its decision to not pay Dr. Lanpher's bills. United Fire still did not pay the claim. After Plucker filed her lawsuit, she signed a

medical authorization in essentially the same form as that provided by United Fire and authorized the release of her medical records to her attorneys. After her attorneys received and disclosed the medical records to United Fire, United Fire paid the claim in full. When the case went to trial, the jury awarded Plucker $100 in damages on her breach of contract claim. It found in favor of United Fire on the bad faith claim.

Plucker now seeks $143,660.48 as reasonable attorney fees and sales tax under SDCL 58-12-3. Plucker argues United Fire acted unreasonably by (1) not accepting Plucker's altered medical release, (2) not sending Dr. Lanpher the altered medical release, (3) telling Plucker she could submit her own medical records, and (4) not otherwise helping Plucker obtain the medical records. Docket 134 at 1-3.

## LEGAL STANDARD

The court may award Plucker attorney fees if United Fire "refused to pay the full amount of [Plucker's] loss, and that such refusal [was] vexatious or without reasonable cause . . . ." SDCL 58-12-3. The statute allows for the collection of "reasonable attorney's fees necessarily incurred in defending or enforcing a valid insurance contract right." *All Nation Ins. Co. v. Brown*, 344 N.W.2d 493, 494 (S.D. 1984) (citing *Fla. Rock, Etc. v. Cont'l Ins. Co.*, 399 So. 2d 122 (Fla. 1981)). The purpose of the statute is to discourage insurance companies from contesting valid claims. *Id.*

**DISCUSSION**

To prevail on her motion for attorney's fees, Plucker must prove three elements: (1) United Fire refused to pay the full amount of Plucker's loss; (2) United Fire's refusal to pay Plucker's claims was vexatious or without reasonable cause; and (3) Plucker's legal fees are a reasonable charge for the "work performed to enforce the insurance contract claim." *Biegler v. Am. Family Mut. Ins. Co.*, 621 N.W.2d 592, 606 (S.D. 2001) (citing *Isaac v. State Farm Mut. Auto. Ins. Co.*, 522 N.W.2d 752 (S.D. 1994); *Brooks v. Milbank Ins. Co.*, 605 N.W.2d 173 (S.D. 2000)). Here, Plucker has failed to prove the second element—that United Fire's refusal to pay Plucker's claims was vexatious or without reasonable cause.

During trial, both parties agreed that United Fire had a right to obtain Plucker's medical records before paying her medical bills. This is a standard practice in the insurance industry. The South Dakota Supreme Court has explained that if there is a reasonable basis for not paying an insured's claim, the insurance company is not in violation of SDCL 58-12-3. *See Howie v. Pennington Cty*, 563 N.W.2d 116, 118-19 (S.D. 1997). Here, United Fire attempted to process Plucker's claim by having her sign a medical authorization that would give United Fire access to her medical records. As an alternative to signing the medical authorization, United Fire told Plucker she could submit her medical records directly to United Fire. Plucker took neither course of action until she brought suit. Because United Fire had a right to review Plucker's medical records, United Fire did not act in violation of SDCL

58-12-3 by refusing to pay Plucker's claim until it had copies of Plucker's medical records.

Plucker primarily relies on five South Dakota Supreme Court cases[1] to support her motion for attorney's fees; however, each case is distinguishable because United Fire's conduct did not rise to the same level of culpability as the defendants in the other cases. The first case Plucker cites is *Lewis v. State Department of Transportation*, 667 N.W.2d 283 (S.D. 2003). In *Lewis*, the South Dakota Department of Transportation denied plaintiff's medical claim for the replacement of his veneers after a metal box struck him in the face. *Id.* at 285, 291. The South Dakota Supreme Court reasoned that the denial was without reasonable cause because the claim administrator gave "inconsistent justifications" for denying the plaintiff's claim and because the administrator did not provide a medical opinion to contradict the plaintiff's doctor. *Id.* at 291-292. Here, United Fire's response and actions remained consistent throughout the handling of Plucker's claim. United Fire repeatedly explained that it needed to receive Plucker's medical records before it could pay her claim. United Fire also did not dispute that Plucker was injured. Rather, United Fire did not pay Plucker's medical bills because it did not have copies of Plucker's medical records. Thus, Plucker's claim is distinguishable from *Lewis*.

---

[1] *Lewis v. State Dep't of Transp.*, 667 N.W.2d 283 (S.D. 2003); *Biegler v. Am. Family Mut. Ins. Co.*, 621 N.W.2d 592 (S.D. 2001); *Sawyer v. Farm Bureau Mut. Ins. Co.*, 619 N.W.2d 644 (S.D. 2000); *Isaac v. State Farm Mut. Auto. Ins. Co.*, 522 N.W.2d 752 (S.D. 1994); *Eldridge v. Nw. G. F. Mut. Ins. Co.*, 221 N.W.2d 16 (S.D. 1974).

Plucker also argues that her claim is similar to the plaintiff's claim in *Biegler v. American Family Mutual Insurance Co.*, 621 N.W.2d 592 (S.D. 2001), where the defendant insurance company "did everything it could to put off, and thereby deceive, [the insured] even though it knew that it had an obligation to defend [the insured]." *Id.* at 607. In *Biegler*, the insurance company denied it had a duty to provide a defense for its insured even though the insurance company knew the policy stated otherwise. *Id.* Here, United Fire did not make a similar denial. United Fire did not tell Plucker her treatments with Dr. Lanpher would not be covered under her policy. Instead, United Fire requested Plucker's medical records to process her claim. United Fire's conduct is not equivalent to that of the defendant in *Biegler*.

Plucker also cites *Sawyer v. Farm Bureau Mutual Insurance Co.*, 619 N.W.2d 644 (S.D. 2000). In *Sawyer*, agents of the defendant insurance company discussed how to undervalue plaintiff's losses, how to make plaintiff appear fraudulent, whether they could use an allegation that plaintiff's wife was committing adultery, and their need to minimize a paper trail. *Id.* at 652. Plucker produced no evidence at trial that United Fire engaged in similar egregious behavior.

Next, Plucker argues *Isaac v. State Farm Mutual Automobile Insurance Co.*, 522 N.W.2d 752 (S.D. 1994), is a sufficient basis for awarding her attorney fees. In *Isaac*, the plaintiff was involved in a car accident with another driver. *Id.* at 754. Defendant insurance company denied plaintiff's claim for benefits and insisted that the other driver was responsible for plaintiff's injuries, even

6

though plaintiff had uninsured motorist coverage. *Id.* The South Dakota Supreme Court summarized the case by saying that "State Farm delayed in investigation, settlement and evaluation for years." *Id.* at 763. State Farm also refused to pay amounts clearly owed under the policy unless the plaintiff dismissed her bad faith claim against the defendant. *Id.* Here, none of United Fire's actions reach the same level of seriousness as the actions taken by State Farm. Once United Fire received Plucker's medical bills, United Fire started processing Plucker's claim. Although Plucker argued at trial that United Fire told her the claim could not be subrogated to collect from the semi-truck driver, United Fire did not attempt to deny coverage for this reason. United Fire's actions are not similar to State Farm's.

Finally, Plucker relies on *Eldridge v. Northwest G. F. Mutual Insurance Co.*, 221 N.W.2d 16 (S.D. 1974). In *Eldridge*, plaintiff reported damage to his home. *Id.* at 17-20. Defendant insurance company had someone assess the damage to the home, but before repairs were completed, the home sustained further damage. *Id.* Defendant refused to conduct a second assessment. *Id.* The South Dakota Supreme Court upheld an award of attorney's fees because "there was no adequate, good faith investigation of plaintiff's claim of additional storm damage to his home." *Id.* at 22. Here, again, United Fire did not dispute that Plucker sought treatment for her injuries stemming from the accident. United Fire did not attempt to reduce or limit the medical bills Plucker submitted. Rather, United Fire simply tried to gain access to Plucker's medical records so it could process her claim.

7

**CONCLUSION**

Plucker fails to show that United Fire acted vexatiously or without reasonable cause. United Fire attempted to process Plucker's claim by obtaining Plucker's medical records, but this process became more difficult when Plucker refused to sign an unaltered medical release. Although United Fire might have been able to handle the situation differently, its refusal to pay Plucker's medical bills was based on its need to access Plucker's medical records, not a desire to delay, limit, or ultimately deny Plucker's claim. Because United Fire did not refuse to pay Plucker's claim vexatiously or without reasonable cause, it is

ORDERED that plaintiff's motion for attorney's fees and costs (Docket 133) is denied.

DATED this 28th day of September, 2016.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE